**PELTIER ENTERPRISES, INC. and Bank of America, N.T. & S.A., Bank of America Texas, N.A., BankAmerica Corporation, Appellants,**

v.

**Jonray A. HILTON and Kelly D. Gibson, Individually, and On Behalf of All Other Persons Similarly Situated, Appellees.**

No. 12-00-00053-CV.

Court of Appeals of Texas, Tyler.

Dec. 20, 2000.

Rehearing Overruled Feb. 5, 2001.

Robert Mowery, Ron Adkinson, Thomas Yoxall, Michelle Gomez Hertzog, Lock Purnell Rain & Harrell PC, Dallas, E. Lee Parsley, Locke Purnell Rain & Harrell P.C., Austin, William Carroll, Donohoe, Jameson & Carroll, P.C., Dallas, for appellants.

James Owen, Life, Stark & Owen, P.C., Athens, Jack McGehee, McGehee & Pianelli, L.L.P., Patricia Tulinski, State of Texas Atty. Gen. Consumer Protection, Houston, for appellees.

Panel consisted of WORTHEN, J., HADDEN, J., and RAMEY, Chief Justice, (Retired).

WORTHEN, Justice.

After a trial on the merits of several claims asserted by two class representatives ("Appellees"), the jury found for Bank of America N.T. & S.A., Bank of America Texas, N.A., BankAmerica Corporation (sometimes hereinafter referred to collectively as "the Bank") and Peltier Enterprises, Inc. ("Peltier"). However, the trial court refused to render judgment on the verdict and certified a class action. The Bank and Peltier (sometimes hereinafter referred to as "Appellants") file this interlocutory appeal challenging the class action certification. We reverse and remand for decertification.

### BACKGROUND

The underlying suit is based upon allegations of fraudulent concealment and Deceptive Trade Practices Act ("DTPA") violations of unconscionability and failure to disclose against both the Bank and Peltier, and tortious interference with a potential contract against Peltier. The complaints

are grounded upon Peltier's (and other unidentified car dealerships') admitted practice of selling a car, providing dealer financing, and "shopping" the paper to financial institutions (such as the Bank), one of which purchases the paper at a discount. In other words, the consumer is offered a particular rate of interest but the financial institution charges a lower rate of interest, with the differential going to the dealer. This payment is called a dealer participation fee, and the consumer is never told about the money that goes to Peltier or about the Bank's lower interest rate.

Peltier and the Bank describe the initial agreement between buyer and seller as a "retail installment transaction," which is specifically allowed by Texas law. TEX. FIN.CODE ANN. § 348.001(7) (Vernon 1998). The bank then purchases the retail installment contract from the seller after the transaction with the buyer is consummated-the bank is not a lender, but a "buyer of the paper." The seller always sells the contract to the bank for some compensation. The car buyer is not a party to this second transaction. Peltier avers that it strictly complies with the Texas Finance Code in regard to its retail installment contracts. It also maintains that the Finance Code anticipates that a retail seller may sell its retail installment contracts to a bank or other third party. TEX.FIN.CODE ANN. § 348.003 (Vernon 1998) Peltier sometimes finds a lending institution to buy its retail installment contracts before entering into the transaction with the consumer, a circumstance which Peltier argues is also specifically permitted by the Finance Code. *Id.*

The Appellees, on the other hand, contend that Peltier never actually enters into an installment contract with the car buyer, and thus the "dealer participation fee" is really a kickback to the dealership for giving the bank the financing business.

In two issues, the Bank and Peltier complain that the trial court abused its discretion in certifying a class under Rule 42(b)(4) (predominance, superiority, and manageability), and that the trial court abused its discretion by certifying a mandatory injunction class action under Rule 42(b)(1)(A) (inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class).

### STANDARD OF REVIEW

An appellate court should reverse a trial court's certification order only if the record shows that the trial court committed a clear abuse of discretion in certifying a class action. *E & V Slack, Inc. v. Shell Oil Co.,* 969 S.W.2d 565, 567 (Tex.App.—Austin 1998, no pet.). An abuse of discretion occurs if the trial court acts without reference to any guiding principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). A failure to analyze or apply the law correctly is an abuse of discretion. *Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex.1996); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). But according to the Texas Supreme Court, an appellate court, in reviewing a certification order, should no longer indulge every presumption in favor of the trial court's ruling, view the evidence in the light most favorable to that ruling, nor err in favor of certification. *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 434–35 (Tex.2000).

Although the ultimate issue at the trial court level is whether Peltier and the Bank have engaged in deceptive and unconscionable actions, the question before *us* is whether the propriety of their conduct can and should be decided on a class-wide basis. This court "may not consider

the substantive merits of the case, and class proponents are not required to prove a prima facie case in order to be certified as a class." *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 842 (Tex.App.— Houston [14th Dist.] 1996, no writ), *rev'd on other grounds, Bernal,* 22 S.W.3d at 434. Instead, the certification issue turns on whether the trial court sufficiently defined the putative class pursuant to Rule 42 of the Texas Rules of Civil Procedure.

### CLASS CERTIFICATION

Under Rule 42, all class actions must satisfy four requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). TEX.R.CIV.P. 42(a).

If the Rule 42(a) elements are satisfied, the trial court must then determine if the class action is maintainable. TEX.R.CIV.P. 42(b). The Bank and Peltier do not complain that the Rule 42(a) elements are not met in this case. However, there are four subsections of Rule 42(b), at least *one* of which must be satisfied before class certification is appropriate. The Bank and Peltier do maintain that none of the Rule 42(b) requirements are satisfied. The trial court certified the class pursuant to Rule 42(b)(1)(A) and 42(b)(4). Rule 42(b)(1)(A) requires a showing that the prosecution of separate actions by or against individual members of the class would *create a risk of inconsistent or varying adjudications* with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. TEX.R.CIV.P. 42(b)(1)(A).

Rule 42(b)(4) requires a showing that the "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members ..." and that the "class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." TEX.R.CIV.P . 42(b)(4) (emphasis added). Matters which are pertinent to the court's finding that the suit is maintainable include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the *management* of a class action.

*Id.* (emphasis added)

### ANALYSIS

In the instant case, the trial court certified the class action with respect to the claims asserted in Appellees' Petition on behalf of the following class of Plaintiffs:

Subclass A(1). All persons who have made a motor vehicle payment on or after June 12, 1994, pursuant to a Retail Installment Sales Contract, in which BANK OF AMERICA paid a "dealer participation" fee to a motor vehicle dealer in the State of Texas, who are not subject to a claim for deficiency in the amount owed under their Retail Installment Sales Contract.

Subclass A(2). All persons who have made a motor vehicle payment on or after June 12, 1994, pursuant to a Retail Installment Sales Contract, in which BANK OF AMERICA paid a "dealer

participation" fee to a motor vehicle dealer in the State of Texas, who are subject to a claim for deficiency in the amount owed under their Retail Installment Sales Contract, and the amount of the alleged deficiency is less than the amount of the "dealer participation" fee.

Subclass B(1). All persons who have made a motor vehicle payment on or after June 12, 1994, pursuant to a Retail Installment Sales Contract, in which BANK OF AMERICA paid "dealer participation" fee to PELTIER ENTERPRISES, INC., who are subject to a claim for deficiency in the amount owed under their Retail Installment Sales Contract, and the amount of the alleged deficiency is equal to or greater than the "dealer participation" fee.

■ In their first issue, the Bank and Peltier assert that the predominance, superiority, and manageability requirements are not satisfied; thus the trial court's certification of the class constitutes error. Their main contention is that individual issues predominate, such as what Plaintiffs knew about their transactions, whether the information was material to them, which representation they relied upon, what Plaintiffs were told or not told by Peltier, and whether Plaintiffs could obtain alternative financing. Therefore, the court would have to do a case-by-case analysis, which precludes the use of a class action. In their second issue, Appellants maintain that the prosecution of separate actions by or against individual members of the class *would not* create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the opposing party. Some plaintiffs would win and some would lose, but that is not considered inconsistent or varying adjudications under the law. We will consider each of these arguments in turn.

### Predominance

■ Under Rule 42, "common" questions *must* predominate over questions affecting only individual class members. Tex.R.Civ.P. 42(b)(4). A common question exists when the answer as to one class member is the same as to all. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 4 S.W.3d 805, 810 (Tex.App.—Houston 1999, no pet .). Common questions that do not produce common answers do not satisfy the Rule 42 commonality requirement. *Wente v. Georgia Pacific Corp.*, 712 S.W.2d 253, 257 (Tex.App.—Austin 1986, no writ). The "predominance requirement . . . is one of the most stringent prerequisites to class certification." *Bernal*, 22 S.W.3d at 433. Courts determine if common issues predominate by identifying the substantive issues that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, common to the class. *Id.* at 434. The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the subject of most of the litigant's and court's efforts. If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. *Bernal*, 22 S.W.3d at 434. Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for other class members to file proofs of claim. *Id.* It is improper to certify a class without knowing how the claims can and will likely be tried. *Id.* at 435. Individual scrutiny by the trial court is necessary to ensure that certification does not "restrict a party from presenting viable claims or defenses without that party's consent." *Id.*

Peltier and the Bank argue that common issues do not predominate over individual issues in the instant case. They take the position that the trial court will be forced to receive evidence at trial from both the plaintiffs and the defendants pertaining to the factual circumstances of each putative class member's loan transaction. We will analyze the elements of each cause of action pleaded to determine if, in fact, this contention has merit.

▆▆▆▆ Appellees' first cause of action is common law fraud. The elements of fraud are (1) that a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury. *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998). Fraudulent concealment, which is also one of Appellees' causes of action, requires proof of the same elements, including a showing of reliance. *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex.1997).

▆▆▆ We believe that at least two of the above elements require individualized proof: (1) the materiality of the misrepresentation or concealment to that plaintiff; and (2) each individual plaintiff's reliance on that misrepresentation or concealment to his or her detriment. To illustrate this point, we look to the jury trial of the class representatives. During the trial, it was shown that the "dealer participation fee" equaled a 5.9% interest rate spread in one case, while the difference in the second case amounted only to $4.00 per month. It required cross-examination of each plain-tiff to determine if the differential was material to him or her. One of the plaintiffs testified that she did not know what interest rate she was given, and that she did not care. Her only concern was the monthly payments. However, there is no presumption that simply because the differential is negligible, it is not material to the retail buyer. Conversely, a court cannot presume that because the differential is substantial, it *does* matter to the buyer. For example, even the 5.9% differential may not be material to someone who cannot acquire financing elsewhere, and is simply happy to drive away in a new vehicle. It is thus clear that answering the questions of materiality and reliance as to one plaintiff does not answer the same question as to other putative class members. *See Spera,* 4 S.W.3d at 811 (Tex. App.—Houston 1999, no pet.) ("the causes of action listed above [fraud, intentional and negligent misrepresentation, and others] pose multiple individual issues, such as determining which potential class members relied on any ... misrepresentation ... and what duty or duties were variously owed to whom."); *see also Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996) ("a fraud class action cannot be certified when individual reliance will be an issue.").

▆▆▆ Another cause of action pleaded by Appellees is unconscionability under the DTPA. Unconscionability requires proof of (1) an act or practice that, (2) to a person's detriment, (3) takes advantage of his lack of knowledge, ability, experience, or capacity, (4) to a grossly unfair degree. Tex.Bus. & Com.Code Ann. § 17.45(5) (Vernon Supp.1998). There must be a showing of what the consumer could have or would have done if he had known about the information. For example, if the consumer could not get financing through any other source and still wanted the car, he may

have purchased it under the retail installment contract as written even if told of the transaction with the Bank. Or if the difference in payments was very small, the consumer might not have cared at all.[1] Plus, there would need to be some showing of each customer's "knowledge, ability, experience, or capacity." A plaintiff with knowledge about indirect lending or with years of experience in the car-selling business would not be able to show that Peltier did anything that was "unconscionable."

■ Under DTPA section 17.46(b)(23), Appellees' third cause of action, a plaintiff must show that the defendant failed to disclose facts known at the time of the transaction with the intent to induce the plaintiff into a transaction he would not have entered had the information been disclosed. TEX.BUS. & COM.CODE ANN. § 17.46(23) (Vernon Supp.1998). This claim requires individualized proof because reliance is an essential element of this DTPA claim. TEX.BUS. & COM.CODE ANN. § 17.50(a)(1)(B) (Vernon Supp.1998) (false, deceptive or misleading act must be "relied on by a consumer to the consumer's detriment"). A class member who could not obtain credit elsewhere is in a different circumstance than one who could. Here, again, the question remains as to what each class member could or would have done if he or she had known of the transaction between Peltier and the Bank. It is not possible that any one individual's evidence on this point could be substituted for another's. *See Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 774 (Tex. App.—Fort Worth 1986, no writ) (not all situations involving fraud and misrepresentation claims are appropriate for class treatment because of material variations in representations made and in the kinds or degrees of reliance).

■ Appellees' final cause of action-tortious interference with prospective business relations-requires proof that a reasonable probability exists that putative class members would have entered a contractual relationship with the Bank, and that Peltier intentionally and maliciously prevented the relationship from occurring with the purpose of harming the putative class members. *See Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied). Again, individualized proof would be necessary to determine if there was a "reasonable probability" that each putative class member and the Bank would have entered into a contractual relationship but for Peltier's "interference." Also, there is the question of whether Peltier maliciously intended to prevent the relationship from occurring in order to harm each putative class member.

In reviewing the causes of action brought by Appellees against the Bank and Peltier, we conclude that the resolution of individual issues is likely to be an overwhelming and unmanageable task for a single jury. We hold, therefore, that because of the numerous fact issues raised by the pleadings, which can only be determined by questioning each individual plaintiff, the common issues do not predominate over questions affecting only individual class members.

### Superiority and Manageability

■ A class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 654 (Tex.App.—

---

1. In the trial on the merits of two of the class representatives' claims, one plaintiff testified that he assumed Peltier was making a profit on the financing, but still continued with his transaction.

Houston [14th Dist.] 1995, writ dism'd w.o.j.). In assessing the superiority of a class action, the court may consider (1) class members' interest in resolving the common issues by class action, (2) the benefit from discovery already commenced, and (3) the trial court's time and effort invested in familiarizing itself with the dispute. *See* TEX.R.CIV.P. 42(b)(4); *Weatherly,* 905 S.W.2d at 654.

In the instant case, the overwhelming predominance of individual issues make a class action unmanageable and, therefore, not a superior method of adjudication. In our opinion, the difficulties outweigh the benefits. Because the putative class members' claims all arise out of face-to-face transactions, any single class member's claim is subject to numerous fact-specific defenses, which, if successful, would defeat that class member's claim. Due process requires that Peltier and the Bank be permitted to take appropriate discovery of absent class members and to present evidence at trial reasonably calculated to defeat the class members' claims. *See Cimino v. Raymark Indus., Inc.,* 151 F.3d 297, 311–321 (5th Cir.) (federal appellate court reversed trial court's refusal to allow defendants to contest individual exposure and causation issues in asbestos case). A class structure that would require taking discovery of all 69,000 putative class members, followed by a trial where Peltier and the Bank would present evidence on individual defenses for 69,000 class members, would make the management of the class impossible. As an Alabama court so aptly put it, "There is a seemingly endless permutation of facts which the court will have to examine to determine the validity of each class member's claim." *Mack v.*

*GMAC,* 169 F.R.D. 671, 678 (M.D.Ala. 1996).[2] We hold, therefore, that class certification in the instant case is inappropriate because a class action is neither a superior method of adjudication, nor would it be manageable by one jury as required by Rule 42(b)(4). Accordingly, we sustain Peltier's and the Bank's first issue.

### Inconsistent Adjudications

Under Rule 42(b)(1)(A), when the only risk is that some plaintiffs may win while others may lose on identical facts, the problem of inconsistent or varying adjudications is not raised. *St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 32 (Tex.App.—Texarkana 1996, no writ). Rather, the rule applies "to situations where inconsistent judgments in separate suits places a defendant in the position of not being able to comply with one judgment without violating the terms of another." *Id.* In the instant case, a trial court could possibly render one of two orders: enjoin Peltier and the Bank to disclose the dealer participation fee to the retail buyer, or enjoin Peltier and the Bank *not* to disclose the dealer participation fee to the retail buyer. However, it is inconceivable that any court would order the defendants *not* to disclose their relationship; therefore, there is no risk of inconsistent adjudications in this case. Accordingly, the trial court abused its discretion in certifying this lawsuit as a class action under Rule 42(b)(1)(A). Therefore, we sustain issue two, and reverse and remand to the trial court for decertification.

2. In *Mack,* as here, the plaintiff purchased a motor vehicle in a credit transaction, her contract was assigned to GMAC, and GMAC paid a portion of the interest to the dealer. Ms. Mack alleged that this payment constituted

fraud by suppression and sought class certification. The court denied certification because of the predominance of individual issues, including reliance.