Carl WALL and Thomas E. Swaney, Individually and on Behalf of all Other Similarly Situated Consumers, Appellants,

v.

PARKWAY CHEVROLET, INC. and Mac Haik, G.P., LLC, d/b/a Mac Haik Ford, Appellees.

No. 01–03–00005–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 28, 2004.

Curt M. Langley, H. Victor Thomas, Richard E. Griffin, Fred A. Simpson, Jackson Walker L.L.P., Houston, for Appellant.

Henry L. Robertson, Law Office of Henry L. Robertson, Philip S. Gordon, Heidi Ferenz, Gordon Law Firm, Robert L. Robertson, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

This is an interlocutory appeal of the trial court's order denying certification of a class action [1] pursuant to Rule 42 of the Texas Rules of Civil Procedure. [2] In their sole issue, appellants Carl Wall and Thomas E. Swaney, individually and on behalf of all other similarly situated consumers (collectively, the buyers), contend that the trial court misapplied the law and abused its discretion by refusing to certify a class of persons who purchased vehicles from Parkway Chevrolet, Inc. and Mac Haik, G.P., LLC, d/b/a Mac Haik Ford (Mac Haik Ford) (collectively, the dealers) and were charged for service-and-benefits coupon books. We affirm.

## Background

In the spring of 2001, Houston television reporter Marvin Zindler presented a story about car buyers being charged for coupon books. Wall sued Parkway Chevrolet in the summer of 2001, seeking actual and punitive damages for himself and similarly situated consumers. The petition alleged that Parkway deceptively included a "fee for 'consumer services'" on the purchase invoice with no explanation other than that it was part of the price of the vehicle. Wall alleged that the "fee" was for a book of "coupons that are worthless and that cannot be used by Wall or the Class members," that Parkway knew the coupons were worthless, and that, if Parkway had informed him and other class members that the book was worthless, they would not have purchased it. Instead, Wall alleged, he and the other class members relied on Parkway's misrepresentations to their detriment. Wall alleged that this practice constituted both laundry-list violations under section 17.46(b)(12) of the Deceptive Trade Practices Act Consumer Protection Act (DTPA) and unconscionable conduct under section 17.45(5) of the DTPA. [3] In his original petition, Wall defined the class of plaintiffs as "all customers who have purchased a vehicle from Parkway Chevrolet, Inc. ('Parkway') and who were charged a fee for a discount coupon book, disguising the charge as 'Consumer Services,' 'Intelesys,' 'NACC,' or other such non-descriptive or misleading terms (hereinafter collectively referred to as 'Consumer Services')." He sought actual and exemplary damages for himself and the class.

In a third amended petition, appellants Wall and Swaney, who had joined the class action as a named plaintiff and joined dealer Mac Haik Ford as a defendant, alleged that both dealers were "engaged in a deceptive act and practice involving the charging of a fee in connection with the sale of automobiles which is deceptively included without explanation on the purchase invoice." They alleged that, "in ex-

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2004–2005) (permitting interlocutory appeal of trial court's determination of whether to certify a class).

2. *See Tex.R. Civ. P.* 42(a),(b) (governing certification of class actions).

3. TEX. BUS. & COM.CODE §§ 17.46(b)(12), 17.45(5) (Vernon 2002); *see also* TEX. BUS. & COM.CODE §§ 17.50(a)(1) and (a)(3) (Vernon 2002) (permitting a consumer to maintain an action when "the use or employment by any person of a deceptive act or practice" enumerated in section 17.46(b) is a producing cause of economic or mental anguish damages and is relied on by the consumer to the consumer's detriment, or where "any unconscionable action or course of action by any person" is a producing cause of such damages).

change for the fee of several hundred dollars, the consumer receives a 'coupon book' which purports to offer 'free' services at the dealer," but it is not disclosed that the customers has paid hundreds of dollars for these purportedly free services. They alleged that, despite numerous complaints and investigations by television reporter Marvin Zindler and the Texas Attorney General's office, the dealers continued to engage in this "misleading, deceptive, fraudulent, and apparently highly lucrative scheme to defraud the trusting consumers." Wall and Swaney alleged that this practice constituted a number of "laundry list" violations of sections 17.50(a)(1) and 17.46(b) of the DTPA,[4] as well as unconscionable conduct under sections 17.50(a)(3) and 17.45(5) of the DTPA.

Wall and Swaney defined the plaintiff class as consisting of two subclasses. They defined subclass A(1) as "all Texas consumers who have purchased a vehicle from Parkway Chevrolet, Inc. ('Parkway'), on or after July 23, 1999 and were charged a fee under the designations such as 'NACC,' 'Consumer Benefits & Services (ECBP),' 'NADW,' 'Intelesys,' and/or other similar designations in connection with the purchase of the vehicle." They defined subclass A(2) as "all Texas consumers who have purchased a vehicle from Mac Haik Ford on or after March 8, 2001 and were charged a fee under the designations such

as 'NACC,' 'Consumer Benefits & Services (ECBP),' 'NADW,' 'Intelesys,' and/or other similar designations in connection with the purchase of the vehicle." Excluded from both subclasses were those persons who had already received a full refund of the fee charged. The only differences between the subclasses were that one subclass included customers of Parkway Chevrolet and the other, customers of Mac Haik Ford, and that the alleged wrongdoing ran from different dates at the two dealerships.

### Motion for Class Certification

■ Wall and Swaney moved for class certification under Texas Rule of Civil Procedure 42. Under rule 42(a), every class action must satisfy four threshold requirements: "(1) numerosity ('the class is so numerous that joinder of all members is impracticable'); (2) commonality ('there are questions of law or fact common to the class'); (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'); and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 433 (Tex.2000) (quoting Tex.R. Civ. P. 42(a)).

In addition to satisfying all the requirements of rule 42(a), the class must also

---

**4.** Tex. Bus. & Com.Code Ann. § 17.46(b)(1) (Vernon 2002) ("passing off goods or services as those of another"); *id.* § 17.46(b)(2) ("causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services"); *id.* § 17.46(b)(3) ("causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another"); *id.* § 17.46(b)(5) ("representing that goods or services have sponsorship, approval, characteristics, ... uses, benefits, or quantities which they do not have ..."); *id.* § 17.46(b)(7) ("representing that goods or services are of a particular standard, quality,

or grade, or that goods are of a particular style or model, if they are of another"); *id.* § 17.46(b)(9) ("advertising goods or services with intent not to sell them as advertised"); *id.* § 17.46(b)(12) ("representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law"); *id.* § 17.46(b)(24) ("the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed").

satisfy at least one of the subparts of rule 42(b). *See* TEX.R. CIV. P. 42(b). In their motion for class certification, appellants alleged that their class action was maintainable pursuant to former rule 42(b)(4), which permits class actions when common questions of law or fact predominate and a class action is superior to other forms of adjudication.[5]

### Wall and Parkway Chevrolet

At the class certification hearing, evidence was presented that in 1999, Wall purchased a vehicle and a benefits package from Parkway Chevrolet and signed a purchase order that contained three preprinted charges—a documentary fee, a title and inspection fee, and a $199 "NACC" charge. The Purchase Order indicated that the buyer understood and agreed to the terms of the order. Wall also signed an "Intelesys Information Form," which stated, "This $199.00 charge has been explained to me and I understand that the special benefits are in addition to the goods and services ordinarily provided in connection with the purchase of the vehicle described above." After he purchased his car, Wall received a coupon booklet in the mail, together with a document entitled "Parkway Chevrolet," which stated,

> Consumer laws covering the sale of motor vehicles require the full disclosure of all charges associated with the purchase. All vehicles retailed by our dealership have a charge which is printed on the retail buyer's order.
>
> This charge is to compensate for various additional consumer services and unreimbursed dealership costs. . . .

To add more value, and to assure your continued satisfaction with our services and products, you will receive a special customer relations program, the "NACC Consumer Services Program." When fully utilized, the benefits provided should result in substantial savings while providing you, our valued customer with:

- $1,726.00 Preferred Customer Checks
- Critical Problem Response Program

This announcement was followed by a "Benefits Package Tabulation" listing total potential savings of $1,726 and approximately 50 coupons in various amounts paid to the order of Parkway Chevrolet. Wall put his benefits package in his glove compartment and never used it.

In 2001, Wall purchased another car from Parkway Chevrolet. This time, he declined to pay for the NACC package (then being sold for $229); and the 2001 invoice reflects a line drawn through and striking the NACC charge. Evidence was presented that Parkway's salesmen were required to explain the coupon books to customers and to make sure that the customers understood the numbers behind their orders, and that buyers were given the opportunity to decline the coupon books and some did, but that many customers liked and used the coupons. Around the beginning of October 2001, Parkway switched from the coupon books to a customer "loyalty card" that was given for free to all customers, but which could be upgraded to obtain discounts from the dealer.

---

5. *See* TEX.R. CIV. P. 42, 553–554 S.W.2d (Tex. Cases) XXXV–XXXVIII (1977, *amended* 2003) [hereinafter "former rule 42"]. We refer to "former rule 42(b)(4)" throughout this opinion because of the renumbering of the former rule's subsection (b)(4) in 2003 as subsection (b)(3). *See* current text of TEX.R. CIV. P. 42.

The provisions of former rule 42 pertinent to this appeal were not substantively changed when the rule was amended. *See Order of the Supreme Court of Texas, Amendments to the Texas Rules of Civil Procedure,* Misc. Docket No. 03–9160 (Oct. 9, 2003, effective Jan. 1, 2004).

### Swaney and Mac Haik Ford

Evidence was also presented that appellant Swaney purchased a car from Mac Haik Ford in 2001. On the "Vehicle Purchase Order and Invoice" that Swaney signed were several fees: a state tax, a vehicle inventory tax, a license and title tax, a deputy fee, and a documentary fee, which was crossed out. The Vehicle Purchase Order and Invoice also contained a $249 "Consumer Benefits & Services (ECBP)" charge. Evidence was presented that every Mac Haik customer who purchased a vehicle was charged for the benefits package and received the package; that Mac Haik trained its salespersons to explain to each customer that the Consumer Benefits and Services package entitled the customer to a coupon book containing coupons for reduced prices on various services and products from Mac Haik; and that, in the fall of 2001, Mac Haik began sending out written explanations of the benefits along with the coupons themselves. There was also evidence that 80–90% of Mac Haik customers who had their vehicles serviced by Mac Haik used the coupons; that some customers came in and asked for the book; and that the customers liked the books.

After the class certification hearing, the trial court denied Wall's and Swaney's request for class certification, and this interlocutory appeal ensued.

### Standard of Review

■ Our review of an interlocutory appeal from a denial of a motion for class certification is limited to determining whether the trial court's denial of the motion constituted an abuse of discretion. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 690–91 (Tex.2002); *Bernal*, 22 S.W.3d at 439. A trial court abuses its discretion only if the record (1) clearly shows that the trial court misapplied the law to the established facts, (2) does not reasonably support the ruling, or (3) shows that the trial court acted arbitrarily or unreasonably. *Sun Coast Res. v. Cooper*, 967 S.W.2d 525, 529 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). We must review the evidence in the light most favorable to the trial court's ruling and indulge every presumption favorable to that ruling. *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 29 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). We must not substitute our judgment for that of the trial court. *Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 740 (Tex.App.-Austin 1998, no pet.).

No findings of fact or conclusions of law were made in the trial court's order denying class certification. Therefore, all questions of fact are presumed found in support of the judgment, and we will uphold the judgment of the trial court on any legal theory supported by the pleadings and the evidence. *See Grant v. Austin Bridge Const. Co.*, 725 S.W.2d 366, 369 (Tex.App.-Houston 1987, no pet.). In determining whether there is evidence to support the judgment and implied findings of fact, we must consider only the evidence favorable to the implied findings and disregard any contrary evidence. *Id.*

### Class Certification

In their sole issue, the buyers contend the trial court abused its discretion when it refused to certify the class.

### Prerequisites to Class Certification

■ When, as here, a predominance-of-common-questions class action is asserted, the commonality determination is subsumed under the predominance determination. *Bernal*, 22 S.W.3d at 435. Common questions are those "questions of law or fact common to the class." *Id.* at 433. A common question exists when the answer as to one class member is the same as to

all. *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805, 810 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Common questions that do not produce common answers do not satisfy rule 42. *Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 257 (Tex.App.-Austin 1986, no writ). A three-step inquiry is required to determine whether common issues predominate: the trial court must (1) identify the substantive issues that will control the outcome of the case, a requirement which implies that the court must correctly identify the elements of each of the plaintiffs' causes of action; (2) assess which issues will predominate in the trial of the merits of the case; and (3) determine whether the predominating issues are, in fact, common to the class. *Bernal,* 22 S.W.3d at 434. Common questions of fact or law predominate over individual issues if common issues of law or fact will be the object of most of the efforts of the litigants and the courts. *Schein,* 102 S.W.3d at 689. Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for the individual members of the class to file proof of their claim. *Bernal,* 22 S.W.3d at 435; *Graebel/Houston Movers,* 26 S.W.3d at 33.

### Commonality and Predominance

In their motion for class certification, Wall and Swaney alleged that "the following common issues predominate: (1) whether the plaintiff class were consumers; (2) whether the charging of a fee under the designations such as 'NACC,' 'Consumer Benefits & Services (ECBP),' 'NADW,' 'Intelesys,' and/or other similar designations is an unconscionable, false, misleading or deceptive act or practice as defined in the DTPA; (3) whether such acts were a producing cause of damages; and (4) the amount of the damages."

To prevail under the DTPA, a plaintiff must show that (1) the plaintiff was a consumer; (2) the defendant committed, among other things, a "laundry-list" violation under DTPA section 17.46(b) on which the plaintiff detrimentally relied or any unconscionable action or course of action; and (3) the wrongful act was a producing cause of the plaintiff's economic or mental-anguish damages. *See* TEX. BUS. & COM.CODE ANN. § § 17.46(b), 17.50(a) (Vernon 2002); *see also id.* § 17.50(a)(1)(A)-(B) (Vernon 2002) (expressly requiring detrimental reliance for these violations); *Schein,* 102 S.W.3d at 686. To prove unconscionability under the DTPA, a plaintiff must prove "(1) an act or practice that, (2) to a person's detriment, (3) takes advantage of his lack of knowledge, ability, experience, or capacity, (4) to a grossly unfair degree." *Peltier Enterprises, Inc. v. Hilton,* 51 S.W.3d 616, 623 (Tex.App.-Tyler 2001, pet. denied). The plaintiffs must show what the consumer could or would have done if he had been informed. *See id.*

The parties concede that all buyers are consumers as defined in the DTPA. However, the dealers dispute Wall's and Swaney's contention that any other questions can be answered on a class-wide basis. Specifically, they argue that an individualized inquiry into each buyer's circumstances is required to answer the question "whether the charging of a fee under the designations such as 'NACC,' 'Consumer Benefits & Services (ECBP),' 'NADW,' 'Intelesys,' and/or other similar designations is an unconscionable, false, misleading or deceptive act or practice as defined in the DTPA." Likewise, the dealers argue that individualized inquiries are required to answer questions of causation of damages and of the amount of damages, if any, suffered by each buyer. We agree with the dealers.

*Subclasses A(1) and A(2)*

 Neither the pleadings nor the evidence identifies any specific misrepresentation, set of misrepresentations, or course of conduct common to the practices of both dealers. Rather, the record reflects that the two dealers used different terms to describe their benefit packages, made different oral and written and disclosures, charged different amounts for their coupon books, and offered different coupons to their customers, running from different dates, by methods that varied over time. Thus, the trial court did not abuse its discretion in concluding that there is no commonality of issues between the two subclasses such that the claims against these dealers could be tried together.

Similarly individualized inquiries characterize each subclass.

***Parkway Chevrolet***

 Parkway Chevrolet produced evidence that its salesmen were trained to explain the numbers behind each customer's purchase order; it also produced disclosure forms signed by Wall acknowledging his understanding and acceptance of the charge for the coupon books; and it demonstrated that Wall could and did decline to purchase a benefits package when he purchased a second car. This evidence undermines Wall's contentions that Parkway charged a "fee" to each customer for the benefits package, that Parkway violated the DTPA by making an identifiable false or deceptive representation on which each buyer relied, and that Parkway took advantage of each customer's "lack of knowledge, ability, experiences, or capacity ... to a grossly unfair degree," giving rise to a common cause of action for a deceptive trade practice; rather, the evidence demonstrates the necessity of an individualized inquiry with respect to each customer to resolve these issues.

Parkway also produced evidence that the benefit packages of the type Wall purchased for $199 provided a variety of services with a total value of $1,726. Because that amount is much greater than the cost of the package, this evidence undermines Wall's contentions that the receipt of the package was a producing cause of damages to each buyer in Subclass A and that the calculation of damages would be a mere mechanical matter. There is evidence that at least some buyers wanted the coupon books. Thus, the trial court could have reasonably concluded that an indeterminate number of buyers realized greater value from the use of the coupons than they paid for the book and that they knowingly and voluntarily purchased the coupon book. The trial court could have further concluded that, for those buyers found to have been deceived, the determination as to which buyers purchased which coupons, what values the coupons had, whether any were redeemed, which ones were redeemed, and what economic loss was suffered by the buyer, if any, would all have to be made on a case-by-case-basis.

***Mac Haik Ford***

 Mac Haik Ford produced evidence that the EBCP charge was identified on the invoice as a consumer benefits charge; that its sales representatives were trained to explain the charge; that its practice changed over time; that buyers during part or all of the class period had been required to sign disclosure forms as to the benefits packages; that many of its buyers were satisfied with the packages, and even sought them out; and that its buyers redeemed a number of coupons each month for valuable savings in services. Thus, as it did with Parkway Chevrolet, the trial court could have reasonably concluded that a fact-finder would first have to determine with respect to each buyer whether any misrepresentation or deceptive omission as to the cost or value of the coupons was

made; what the misrepresentation or omission was; who made it; and whether the buyer relied on it and was harmed, or whether he signed a disclosure form indicating that he understood and accepted the charge. The trial court could also have reasonably concluded that, for each person found to have relied on an alleged misrepresentation or deceptive charge, the factfinder would have to analyze whether and to what extent the deceptive representation or practice was a producing cause of that person's damages, a determination that would differ based on the coupons the buyer received, the amount he paid for the coupons, the value of the coupons, and whether he redeemed the coupons.

The situation here is not analogous to that in *Alford Chevrolet–Geo v. Jones*, 91 S.W.3d 396 (Tex.App.-Texarkana 2002, pet. denied, pet. for rehearing filed), as appellants contend. In *Alford*, a class action was brought against more than 600 new car dealerships that allegedly conspired to use a designation such as "vehicle inventory tax" on sales documents to pass on a dealer's tax to the customer. *Id.* at 399. The court held that, although the specific terms used varied from dealer to dealer, all of the dealers conspired together to ensure that they charged the tax in the same manner in order to add $30 to $50 to the sale of each vehicle. *Id.* at 402; *see also Graebel/Houston Movers, Inc.*, 26 S.W.3d at 33 (holding that predominant issue was whether defendant uniformly billed customers for storage insurance and failed to procure insurance, not whether he made misrepresentations to each individual class member).

Unlike this case, in which reliance on an indeterminate course of conduct is alleged, proof of the class's conspiracy claims in *Alford* turned on proof that the dealers knew the object of the conspiracy, took action in unison to further it, and enjoyed the fruits of the transactions. *Id.* at 403. Moreover, as the *Alford* court pointed out, there was "no indication from the discovery that there were any material variations in the written representations made." *Id.* at 405. Rather, the documents and depositions obtained in discovery clearly showed that the dealers' trade organizations designed the mode in which the tax would be presented to customers and established the purpose of the conspiracy, to add $30 to $50 to the bottom line. *Id.* at 402.

This case is much more like *Peltier*, 51 S.W.3d 616, a class action suit brought against a named car dealership, Peltier, other unnamed dealerships, and several banks that was grounded in the dealer's practice of selling a car, providing dealer financing, and shopping the commercial paper to financial institutions for purchase at a discount. The plaintiffs alleged that the defendants' failure to disclose to buyers that the rate of interest they were charged was higher than that charged by the financial institution to whom their financing was sold and that the differential was paid to the dealer gave rise to claims of fraudulent concealment, failure to disclose, unconscionability in violation of the DTPA, and tortious interference with potential contracts.

The *Peltier* court held, with respect to the buyers' fraud claim, that both the materiality of the misrepresentation or concealment and a putative class member's reliance on the information to his detriment required individualized proof. 51 S.W.3d at 623. Likewise, the unconscionability claims required individualized proof as to what the buyer would have done had he had the information. *Id.* at 624. The court pointed out that not all situations involving fraud and misrepresentation claims are appropriate for class action treatment because of differences in the

materiality of the representations to the plaintiff and the kinds or degrees of reliance. *Id.* Such is the case here.

We hold that the trial court did not abuse its discretion in concluding that questions of fact requiring individualized inquiry predominated over any issues common to the class as a whole or to either subclass.

## Conclusion

The trial court could have reasonably concluded that the necessity of individualized determinations regarding alleged misrepresentations and failure to disclose, the application of the law to those facts, and questions related to damages reasonably foreclosed certification of the class. According, we hold that the trial court did not abuse its discretion in refusing to certify the class. We overrule appellants' sole issue. Because our holding is dispositive of the case, we need not address the other factors which must be demonstrated before class certification is justified.

We affirm the trial court's ruling.