Opinion issued October 28, 2004
     









In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00005-CV




CARL WALL AND THOMAS E. SWANEY, INDIVIDUALLY AND ON
BEHALF OF ALL OTHER SIMILARLY SITUATED CONSUMERS,
Appellants

V.

PARKWAY CHEVROLET, INC. AND MAC HAIK, G.P., LLC, D/B/A MAC
HAIK FORD, Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 01-37125




O P I N I O N

          This is an interlocutory appeal of the trial court’s order denying certification
of a class action


 pursuant to Rule 42 of the Texas Rules of Civil Procedure.


 In their
sole issue, appellants Carl Wall and Thomas E. Swaney, individually and on behalf
of all other similarly situated consumers (collectively, the buyers), contend that the
trial court misapplied the law and abused its discretion by refusing to certify a class
of persons who purchased vehicles from Parkway Chevrolet, Inc. and Mac Haik, G.P.,
LLC, d/b/a Mac Haik Ford (Mac Haik Ford) (collectively, the dealers) and were
charged for service-and-benefits coupon books. We affirm.
Background
          In the spring of 2001, Houston television reporter Marvin Zindler presented a
story about car buyers being charged for coupon books. Wall sued Parkway
Chevrolet in the summer of 2001, seeking actual and punitive damages for himself
and similarly situated consumers. The petition alleged that Parkway deceptively
included a “fee for ‘consumer services’” on the purchase invoice with no explanation
other than that it was part of the price of the vehicle. Wall alleged that the “fee” was
for a book of “coupons that are worthless and that cannot be used by Wall or the
Class members,” that Parkway knew the coupons were worthless, and that, if Parkway
had informed him and other class members that the book was worthless, they would
not have purchased it. Instead, Wall alleged, he and the other class members relied
on Parkway’s misrepresentations to their detriment. Wall alleged that this practice
constituted both laundry-list violations under section 17.46(b)(12) of the Deceptive
Trade Practices Act Consumer Protection Act (DTPA) and unconscionable conduct
under section 17.45(5) of the DTPA.


 In his original petition, Wall defined the class
of plaintiffs as “all customers who have purchased a vehicle from Parkway Chevrolet,
Inc. (“Parkway”) and who were charged a fee for a discount coupon book, disguising
the charge as “Consumer Services,” “Intelesys,” “NACC,” or other such non-descriptive or misleading terms (hereinafter collectively referred to as “Consumer
Services”).” He sought actual and exemplary damages for himself and the class.
          In a third amended petition, appellants Wall and Swaney, who had joined the
class action as a named plaintiff and joined dealer Mac Haik Ford as a defendant,
alleged that both dealers were “engaged in a deceptive act and practice involving the
charging of a fee in connection with the sale of automobiles which is deceptively
included without explanation on the purchase invoice.” They alleged that, “in
exchange for the fee of several hundred dollars, the consumer receives a ‘coupon
book’ which purports to offer ‘free’ services at the dealer,” but it is not disclosed that
the customers has paid hundreds of dollars for these purportedly free services. They
alleged that, despite numerous complaints and investigations by television reporter
Marvin Zindler and the Texas Attorney General’s office, the dealers continued to
engage in this “misleading, deceptive, fraudulent, and apparently highly lucrative
scheme to defraud the trusting consumers.” Wall and Swaney alleged that this
practice constituted a number of “laundry list” violations of sections 17.50(a)(1) and
17.46(b) of the DTPA,


 as well as unconscionable conduct under sections 17.50(a)(3)
and 17.45(5) of the DTPA. 
          Wall and Swaney defined the plaintiff class as consisting of two subclasses. 
They defined subclass A(1) as “all Texas consumers who have purchased a vehicle
from Parkway Chevrolet, Inc. (“Parkway”), on or after July 23, 1999 and were
charged a fee under the designations such as ‘NACC,’ ‘Consumer Benefits &
Services (ECBP),’ ‘NADW,’ ‘Intelesys,’ and/or other similar designations in
connection with the purchase of the vehicle.” They defined subclass A(2) as “all
Texas consumers who have purchased a vehicle from Mac Haik Ford on or after
March 8, 2001 and were charged a fee under the designations such as ‘NACC,’
‘Consumer Benefits & Services (ECBP),’ ‘NADW,’ ‘Intelesys,’ and/or other similar
designations in connection with the purchase of the vehicle.” Excluded from both
subclasses were those persons who had already received a full refund of the fee
charged. The only differences between the subclasses were that one subclass
included customers of Parkway Chevrolet and the other, customers of Mac Haik Ford,
and that the alleged wrongdoing ran from different dates at the two dealerships.
          Motion for Class Certification
          Wall and Swaney moved for class certification under Texas Rule of Civil
Procedure 42. Under rule 42(a), every class action must satisfy four threshold
requirements: “(1) numerosity (‘the class is so numerous that joinder of all members
is impracticable’); (2) commonality (‘there are questions of law or fact common to the
class’); (3) typicality (‘the claims or defenses of the representative parties are typical
of the claims or defenses of the class’); and (4) adequacy of representation (‘the
representative parties will fairly and adequately protect the interests of the class’).” 
Southwestern Refining Co. v. Bernal, 22 S.W.3d 425, 433 (Tex. 2000) (quoting Tex.
R. Civ. P. 42(a)). 
          In addition to satisfying all the requirements of rule 42(a), the class must also
satisfy at least one of the subparts of rule 42(b). See Tex. R. Civ. P. 42 (b). In their
motion for class certification, appellants alleged that their class action was
maintainable pursuant to former rule 42(b)(4), which permits class actions when
common questions of law or fact predominate and a class action is superior to other
forms of adjudication.



          Wall and Parkway Chevrolet
          At the class certification hearing, evidence was presented that in 1999, Wall
purchased a vehicle and a benefits package from Parkway Chevrolet and signed a
purchase order that contained three preprinted charges—a documentary fee, a title
and inspection fee, and a $199 “NACC” charge. The Purchase Order indicated that
the buyer understood and agreed to the terms of the order. Wall also signed an
“Intelesys Information Form,” which stated, “This $199.00 charge has been explained
to me and I understand that the special benefits are in addition to the goods and
services ordinarily provided in connection with the purchase of the vehicle described
above.” After he purchased his car, Wall received a coupon booklet in the mail,
together with a document entitled “Parkway Chevrolet,” which stated,
 Consumer laws covering the sale of motor vehicles require the full disclosure
of all charges associated with the purchase. All vehicles retailed by our
dealership have a charge which is printed on the retail buyer’s order.
 
This charge is to compensate for various additional consumer services and
unreimbursed dealership costs. . . .
 
To add more value, and to assure your continued satisfaction with our services
and products, you will receive a special customer relations program, the
“NACC Consumer Services Program.” When fully utilized, the benefits
provided should result in substantial savings while providing you, our valued 
customer with:
 
          ∙        $1,726.00 Preferred Customer Checks
 
          ∙        Critical Problem Response Program
 
This announcement was followed by a “Benefits Package Tabulation” listing total
potential savings of $1,726 and approximately 50 coupons in various amounts paid
to the order of Parkway Chevrolet. Wall put his benefits package in his glove
compartment and never used it.
          In 2001, Wall purchased another car from Parkway Chevrolet. This time, he
declined to pay for the NACC package (then being sold for $229); and the 2001
invoice reflects a line drawn through and striking the NACC charge. Evidence was
presented that Parkway’s salesmen were required to explain the coupon books to
customers and to make sure that the customers understood the numbers behind their
orders, and that buyers were given the opportunity to decline the coupon books and 
some did, but that many customers liked and used the coupons. Around the
beginning of October 2001, Parkway switched from the coupon books to a customer
“loyalty card” that was given for free to all customers, but which could be upgraded
to obtain discounts from the dealer.
          Swaney and Mac Haik Ford
          Evidence was also presented that appellant Swaney purchased a car from Mac
Haik Ford in 2001. On the “Vehicle Purchase Order and Invoice” that Swaney signed
were several fees: a state tax, a vehicle inventory tax, a license and title tax, a deputy
fee, and a documentary fee, which was crossed out. The Vehicle Purchase Order and
Invoice also contained a $249 “Consumer Benefits & Services (ECBP)” charge. 
Evidence was presented that every Mac Haik customer who purchased a vehicle was
charged for the benefits package and received the package; that Mac Haik trained its
salespersons to explain to each customer that the Consumer Benefits and Services
package entitled the customer to a coupon book containing coupons for reduced
prices on various services and products from Mac Haik; and that, in the fall of 2001,
Mac Haik began sending out written explanations of the benefits along with the
coupons themselves. There was also evidence that 80-90% of Mac Haik customers
who had their vehicles serviced by Mac Haik used the coupons; that some customers
came in and asked for the book; and that the customers liked the books.
          After the class certification hearing, the trial court denied Wall’s and Swaney’s
request for class certification, and this interlocutory appeal ensued.
Standard of Review
          Our review of an interlocutory appeal from a denial of a motion for class
certification is limited to determining whether the trial court’s denial of the motion
constituted an abuse of discretion. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 
690-91 (Tex. 2002); Bernal, 22 S.W.3d at 439. A trial court abuses its discretion only
if the record (1) clearly shows that the trial court misapplied the law to the established
facts, (2) does not reasonably support the ruling, or (3) shows that the trial court acted
arbitrarily or unreasonably. Sun Coast Res. v. Cooper, 967 S.W.2d 525, 529 (Tex.
App.—Houston [1st Dist.] 1998, pet. dism’d w.o.j.). We must review the evidence
in the light most favorable to the trial court’s ruling and indulge every presumption
favorable to that ruling. Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24, 29
(Tex. App.—Houston [1st Dist.] 2000, pet. dism’d w.o.j.). We must not substitute
our judgment for that of the trial court. Tana Oil & Gas Corp. v. Bates, 978 S.W.2d
735, 740 (Tex. App.—Austin 1998, no pet.). 
          No findings of fact or conclusions of law were made in the trial court’s order
denying class certification. Therefore, all questions of fact are presumed found in
support of the judgment, and we will uphold the judgment of the trial court on any
legal theory supported by the pleadings and the evidence. See Grant v. Austin Bridge
Const. Co., 725 S.W.2d 366, 369 (Tex. App.—Houston 1987, no pet.). In
determining whether there is evidence to support the judgment and implied findings
of fact, we must consider only the evidence favorable to the implied findings and
disregard any contrary evidence. Id.
Class Certification
          In their sole issue, the buyers contend the trial court abused its discretion when
it refused to certify the class. 
          Prerequisites to Class Certification
          When, as here, a predominance-of-common-questions class action is asserted,
the commonality determination is subsumed under the predominance determination. 
Bernal, 22 S.W.3d at 435. Common questions are those “questions of law or fact
common to the class.” Id. at 433. A common question exists when the answer as to
one class member is the same as to all. Spera v. Fleming, Hovenkamp & Grayson,
P.C., 4 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Common
questions that do not produce common answers do not satisfy rule 42. Wente v.
Georgia-Pacific Corp., 712 S.W.2d 253, 257 (Tex. App.—Austin 1986, no writ). A
three-step inquiry is required to determine whether common issues predominate: the
trial court must (1) identify the substantive issues that will control the outcome of the
case, a requirement which implies that the court must correctly identify the elements
of each of the plaintiffs’ causes of action; (2) assess which issues will predominate
in the trial of the merits of the case; and (3) determine whether the predominating
issues are, in fact, common to the class. Bernal, 22 S.W.3d at 434. Common
questions of fact or law predominate over individual issues if common issues of law
or fact will be the object of most of the efforts of the litigants and the courts. Schein,
102 S.W.3d at 689. Ideally, a judgment in favor of the named plaintiffs should
decisively settle the entire controversy, and all that should remain is for the individual
members of the class to file proof of their claim. Bernal, 22 S.W.3d at 435;
Graebel/Houston Movers, 26 S.W.3d at 33.
          Commonality and Predominance
          In their motion for class certification, Wall and Swaney alleged that “the
following common issues predominate: (1) whether the plaintiff class were
consumers; (2) whether the charging of a fee under the designations such as ‘NACC,’
‘Consumer Benefits & Services (ECBP),’ ‘NADW,’ ‘Intelesys,’ and/or other similar
designations is an unconscionable, false, misleading or deceptive act or practice as
defined in the DTPA; (3) whether such acts were a producing cause of damages; and
(4) the amount of the damages.” 
          To prevail under the DTPA, a plaintiff must show that (1) the plaintiff was a
consumer; (2) the defendant committed, among other things, a “laundry-list” violation
under DTPA section 17.46(b) on which the plaintiff detrimentally relied or any
unconscionable action or course of action; and (3) the wrongful act was a producing
cause of the plaintiff’s economic or mental-anguish damages. See Tex. Bus. & Com.
Code Ann. § § 17.46(b), 17.50(a) (Vernon 2002); see also id. § 17.50(a)(1)(A)-(B)
(Vernon 2002) (expressly requiring detrimental reliance for these violations); Schein,
102 S.W.3d at 686. To prove unconscionability under the DTPA, a plaintiff must
prove “(1) an act or practice that, (2) to a person’s detriment, (3) takes advantage of
his lack of knowledge, ability, experience, or capacity, (4) to a grossly unfair degree.” 
Peltier Enterprises, Inc. v. Hilton, 51 S.W.3d 616, 623 (Tex. App.—Tyler 2001, pet.
denied). The plaintiffs must show what the consumer could or would have done if
he had been informed. See id. 
          The parties concede that all buyers are consumers as defined in the DTPA. 
However, the dealers dispute Wall’s and Swaney’s contention that any other
questions can be answered on a class-wide basis. Specifically, they argue that an
individualized inquiry into each buyer’s circumstances is required to answer the
question “whether the charging of a fee under the designations such as ‘NACC,’
‘Consumer Benefits & Services (ECBP),’ ‘NADW,’ ‘Intelesys,’ and/or other similar
designations is an unconscionable, false, misleading or deceptive act or practice as
defined in the DTPA.” Likewise, the dealers argue that individualized inquiries are
required to answer questions of causation of damages and of the amount of damages,
if any, suffered by each buyer. We agree with the dealers.
          Subclasses A(1) and A(2)
          Neither the pleadings nor the evidence identifies any specific
misrepresentation, set of misrepresentations, or course of conduct common to the
practices of both dealers. Rather, the record reflects that the two dealers used different
terms to describe their benefit packages, made different oral and written and
disclosures, charged different amounts for their coupon books, and offered different
coupons to their customers, running from different dates, by methods that varied over
time. Thus, the trial court did not abuse its discretion in concluding that there is no
commonality of issues between the two subclasses such that the claims against these
dealers could be tried together. 
          Similarly individualized inquiries characterize each subclass.
          Parkway Chevrolet
          Parkway Chevrolet produced evidence that its salesmen were trained to explain
the numbers behind each customer’s purchase order; it also produced disclosure
forms signed by Wall acknowledging his understanding and acceptance of the charge
for the coupon books; and it demonstrated that Wall could and did decline to
purchase a benefits package when he purchased a second car. This evidence
undermines Wall’s contentions that Parkway charged a “fee” to each customer for the
benefits package, that Parkway violated the DTPA by making an identifiable false or
deceptive representation on which each buyer relied, and that Parkway took
advantage of each customer’s “lack of knowledge, ability, experiences, or capacity
. . . to a grossly unfair degree,” giving rise to a common cause of action for a
deceptive trade practice; rather, the evidence demonstrates the necessity of an
individualized inquiry with respect to each customer to resolve these issues.
          Parkway also produced evidence that the benefit packages of the type Wall
purchased for $199 provided a variety of services with a total value of $1,726. 
Because that amount is much greater than the cost of the package, this evidence
undermines Wall’s contentions that the receipt of the package was a producing cause
of damages to each buyer in Subclass A and that the calculation of damages would
be a mere mechanical matter. There is evidence that at least some buyers wanted the
coupon books. Thus, the trial court could have reasonably concluded that an
indeterminate number of buyers realized greater value from the use of the coupons
than they paid for the book and that they knowingly and voluntarily purchased the
coupon book. The trial court could have further concluded that, for those buyers
found to have been deceived, the determination as to which buyers purchased which
coupons, what values the coupons had, whether any were redeemed, which ones were
redeemed, and what economic loss was suffered by the buyer, if any, would all have
to be made on a case-by-case-basis.
          Mac Haik Ford
          Mac Haik Ford produced evidence that the EBCP charge was identified on the
invoice as a consumer benefits charge; that its sales representatives were trained to
explain the charge; that its practice changed over time; that buyers during part or all
of the class period had been required to sign disclosure forms as to the benefits
packages; that many of its buyers were satisfied with the packages, and even sought
them out; and that its buyers redeemed a number of coupons each month for valuable
savings in services. Thus, as it did with Parkway Chevrolet, the trial court could have
reasonably concluded that a fact-finder would first have to determine with respect to
each buyer whether any misrepresentation or deceptive omission as to the cost or
value of the coupons was made; what the misrepresentation or omission was; who
made it; and whether the buyer relied on it and was harmed, or whether he signed a
disclosure form indicating that he understood and accepted the charge. The trial court
could also have reasonably concluded that, for each person found to have relied on
an alleged misrepresentation or deceptive charge, the fact-finder would have to
analyze whether and to what extent the deceptive representation or practice was a
producing cause of that person’s damages, a determination that would differ based
on the coupons the buyer received, the amount he paid for the coupons, the value of
the coupons, and whether he redeemed the coupons. 
          The situation here is not analogous to that in Alford Chevrolet-Geo v. Jones,
91 S.W.3d 396 (Tex. App.—Texarkana 2002, pet. denied, pet. for rehearing filed),
as appellants contend. In Alford, a class action was brought against more than 600
new car dealerships that allegedly conspired to use a designation such as “vehicle
inventory tax” on sales documents to pass on a dealer’s tax to the customer. Id. at
399. The court held that, although the specific terms used varied from dealer to
dealer, all of the dealers conspired together to ensure that they charged the tax in the
same manner in order to add $30 to $50 to the sale of each vehicle. Id. at 402; see
also Graebel/Houston Movers, Inc., 26 S.W.3d at 33 (holding that predominant issue
was whether defendant uniformly billed customers for storage insurance and failed
to procure insurance, not whether he made misrepresentations to each individual class
member). 
          Unlike this case, in which reliance on an indeterminate course of conduct is
alleged, proof of the class’s conspiracy claims in Alford turned on proof that the
dealers knew the object of the conspiracy, took action in unison to further it, and
enjoyed the fruits of the transactions. Id. at 403. Moreover, as the Alford court
pointed out, there was “no indication from the discovery that there were any material
variations in the written representations made.” Id. at 405. Rather, the documents
and depositions obtained in discovery clearly showed that the dealers’ trade
organizations designed the mode in which the tax would be presented to customers
and established the purpose of the conspiracy, to add $30 to $50 to the bottom line. 
Id. at 402.
          This case is much more like Peltier, 51 S.W.3d 616, a class action suit brought
against a named car dealership, Peltier, other unnamed dealerships, and several banks
that was grounded in the dealer’s practice of selling a car, providing dealer financing,
and shopping the commercial paper to financial institutions for purchase at a
discount. The plaintiffs alleged that the defendants’ failure to disclose to buyers that
the rate of interest they were charged was higher than that charged by the financial
institution to whom their financing was sold and that the differential was paid to the
dealer gave rise to claims of fraudulent concealment, failure to disclose,
unconscionability in violation of the DTPA, and tortious interference with potential
contracts.
          The Peltier court held, with respect to the buyers’ fraud claim, that both the
materiality of the misrepresentation or concealment and a putative class member’s
reliance on the information to his detriment required individualized proof. 51 S.W.3d
at 623. Likewise, the unconscionability claims required individualized proof as to
what the buyer would have done had he had the information. Id. at 624. The court
pointed out that not all situations involving fraud and misrepresentation claims are
appropriate for class action treatment because of differences in the materiality of the
representations to the plaintiff and the kinds or degrees of reliance. Id. Such is the
case here.
          We hold that the trial court did not abuse its discretion in concluding that
questions of fact requiring individualized inquiry predominated over any issues
common to the class as a whole or to either subclass.
Conclusion
          The trial court could have reasonably concluded that the necessity of
individualized determinations regarding alleged misrepresentations and failure to
disclose, the application of the law to those facts, and questions related to damages
reasonably foreclosed certification of the class. According, we hold that the trial
court did not abuse its discretion in refusing to certify the class. We overrule
appellants’ sole issue. Because our holding is dispositive of the case, we need not
address the other factors which must be demonstrated before class certification is
justified.
          We affirm the trial court’s ruling.
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
 
Panel consists of Justices Nuchia, Jennings, and Keyes.