CAUSE NO. 04-648-F

| | | |
|---|---|---|
| JOSE M. GOMEZ, individually and on behalf of all other similarly situated persons, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | NUECES COUNTY, TEXAS |
| THE HERTZ CORPORATION and TEXAS SOUTH RENTALS, INC., a/k/a TEXAS SOUTH, INC., | § § § § § | |
| Defendant. | § | 214th JUDICIAL DISTRICT |

## CLASS CERTIFICATION ORDER

On August 3, 2006, Plaintiff's First Amended Motion for Class Certification was presented to this Court for hearing. After considering that Amended Motion, defendants' Opposition, the pleadings, briefs, and evidence presented, the arguments of counsel, and post-argument supplemental briefing, it is this Court's opinion that the Amended Motion has merit and the case meets all legal requirements for certification, and certification should be, and hereby is, GRANTED, as set forth in this Class Certification Order.

### Case Summary

The Court makes the following initial findings based upon the pleadings, evidence and argument of counsel. Many of these initial findings are not contested:

On January 17, 2003, Plaintiff Jose Gomez rented a vehicle from Texas South Rentals, Inc., a Hertz licensee location in Corpus Christi, Nueces County, Texas. (Collectively referred to throughout as "Hertz".) He did not pre-pay for fuel. He returned the vehicle roughly one-quarter full, and was charged a $3.99 Fuel and Service Charge (FSC), which Hertz labeled a "FUEL & SVC" charge. The total FSC was $52.04. .



The FSC was disclosed to Plaintiff at the time he rented the vehicle. It was also represented in writing in his rental documents. Plaintiff did not complain about the charge prior to bringing this lawsuit, nor did he stop payment on his credit card charge. Instead, he sought counsel and filed suit roughly one year later.

Hertz requires customers to either purchase a full tank at the time of rental (the pre-paid fuel purchase option, or FPO) or to fill the tank before returning the vehicle. That is true regardless of what agreement the customer rents under.

If a customer chooses the pre-paid fuel purchase option, he is charged for a full tank of gas before he leaves the counter. The customer can then return the vehicle with any level of gasoline he chooses, e.g., 1/4 tank, 1/2 tank, etc. The price per gallon charged by Hertz is the price at or near market price in that geographic area. It may also include whatever cost Hertz incurs in re-fueling the vehicle when it is returned with less than a full tank.

If a consumer does not pre-pay, and then does not fill the tank prior to returning the vehicle, Hertz imposes the FSC. In this case, the FSC totaled $52.04. The FSC is a corporate policy imposed by corporate locations and licensees like Texas South, Inc., as it was in this case. The substitute facts relating to the FSC do not vary by agreement or location, only price might vary. While Hertz contends that cannot be held legally liable in any way in connection with that charge, this contention was denied after Hertz moved for summary judgment. Hertz continues to contend that it has no input into, and gains no direct financial benefit from, what its licensees collect for FSC charges. Whether or not Hertz can prove those facts, there is evidence before this Court by which Plaintiff could establish corporate liability on a number of pled theories, based upon proof that the licensee defendant, and all licensees, charged the FSC pursuant to Hertz corporate policy and practice.

Hertz's interrogatory answers and documents produced in response to discovery in this case do not indicate any additional services performed by Hertz, or attendant costs incurred, when a vehicle is returned under the FSC versus the FPO option. Hertz's own answers to Interrogatories 10 and 11, which were put into the record at the certification hearing, demonstrate that the costs incurred for both are identical. While the merits of plaintiff's claims are not to be considered and resolved by this Court at the certification stage, the Court notes that Hertz does not appear anywhere in the certification record to contest the fact that the Fuel Service Charge in excess of the FPO charge goes not to fuel and service, but to profit. Documents considered by this Court and filed under seal include Plaintiff's Exhibits "B" thru "F" to his Amended Motion for Class Certification.

The Court makes its findings of fact and conclusions of law, and sets forth its basis for granting certification in compliance with TEX. R. CIV. P. Rules 42(a) and (b)(3) and controlling authority, as follows:

## The Requirements of TEX. R. CIV. P. Rule 42(a) Are Satisfied

Plaintiff brings this action as amended on behalf of the following Class: All Texas residents who were charged an FSC in Texas after February 6, 2000.

All Class actions must satisfy the following threshold requirements:

1. The Class must be so numerous that joinder is impracticable (numerosity);

2. There are questions of law or fact common to the Class (commonality);

3. The claims or defenses of the representative parties are typical of the claims or defenses of the Class (typicality); and

4. The representative parties will fairly and adequately protect the interests of the Class (adequacy of representation).

TEX. R. CIV. P. 42(a).

## 1. Numerosity

The numerosity requirement is satisfied if the Class is so numerous that joinder of all members is impracticable. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund*, 886 S.W.2d 470 (Tex.App.--Austin 1994, writ dism'd w.o.j.). Hotels.com has processed in excess of ten thousand reservations for Texas residents, and in excess of one million reservations nationwide in 2003 alone.

Hertz does not challenge numerosity, and the Court finds that as a matter of law, the numerosity requirement is clearly met. *Adams v. Reagan*, 791 S.W.2d 284, 288 (Tex. App.--Fort Worth 1990, no writ) (stating that there was no argument that subsection (1) of Rule 42 had been met, since it was undisputed that there were between 800 and 1100 potential participants); *Tex. Educ. Agency v. Leeper*, 843 S.W.2d 41 (Tex. App.--Fort Worth 1991), *aff'd in part and rev'd in part on other grounds*, 893 S.W.2d 432 (Tex. 1994) (more than 2000 Class members met numerosity requirement).

## 2. Commonality

Commonality requires a determination that "there are questions of law or fact common to the Class." TEX. R. CIV. P. 42(a)(2). Common questions are those questions that, when answered as to the named plaintiff, are answered as to the Class members. *Health & Tennis Corp. of America v. Jackson*, 928 S.W.2d 583, 590 (Tex.App.--San Antonio 1996, no writ).

"The threshold for commonality is not high." *Union Pac. Res. Group, Inc. v. Hankins*, 111 S.W.3d 69, 74 (Tex. 2003) (quoting *Phillips Petroleum Co. v. Bowden*, 108 S.W.3d 385 (Tex.App.--Houston [14th Dist.] 2003, no pet.). That threshold is met when at least one issue's resolution would affect the claims of all or a significant number of Class members. *Sun Coast Resources, Inc. v. Cooper*, 967 S.W.2d 525, 532 (Tex.App.--Houston [1st Dist.] 1998, pet dism'd

w.o.j.) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see, also, Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) (the commonality requirement "is not demanding"). In fact, a single common issue of fact or law can be sufficient to meet the commonality requirement. *Microsoft Corp.*, 914 S.W.2d at 611; *Rio Grande Valley Gas Co. V. City of Pharr*, 962 S.W.2d 631, 641 (Tex.App.--Corpus Christi 1997, pet. dism'd w.o.j.)

Plaintiff alleges that Hertz engaged in the same uniform policy and practice in regard to its FSC, and the documents produced by Hertz prove that to be the case. The Court finds that Hertz engaged in the same uniform policy and practice in regard to the charging of the FSC. The FSC is borne out of and distributed by a corporate policy, regardless of whether the entity imposing the charge is a corporate location or a licensee. The Court finds that the following issues of fact and law are common to the named Plaintiff and the Class:

(a)     Whether the FSC is unconscionable and therefore unenforceable;

(b)     Whether the FSC violates TX-UCC §2A-504;

(c)     Whether Defendants breached their contracts by charging the FSC;

(d)     Whether Defendants fraudulently misrepresented the FSC; and

(e)     Whether Plaintiff and members of the Plaintiff Class are entitled to damages, and if so, what is the proper measure of such damages.

As such, the Court finds that when answered for the Class representative, the above questions will be answered for the Class. TEX. R. CIV. P. Rule 42(c)(1)(D)(ii).

The Court concludes that the same actionable conduct therefore relates to all potential Class members. Accordingly, the commonality requirement is satisfied. *Snyder Communications*, 94 S.W.3d at 231, *rev'd on other grounds* ("commonality is satisfied if the

Class members were subject to the same misrepresentations and omissions"); *FirstCollect, Inc. v. Armstrong*, 976 S.W.2d 294, 298 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.) (all customers paid a collection fee that was alleged to be unlawful); *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396 (Tex. App.--Texarkana 2002, pet. denied) (every Class member subject to same sales contract terms); *National Western Life Ins. Co*, 86 S.W.3d 285 (Tex. App.--Austin 2002, pet. filed) (every Class member entered into same contract and claims same breach); *San Antonio Hispanic Police Officers' Org. v. San Antonio*, 188 F.R.D. 433, 442 (W.D.Tex. 1999) ("As long as Class members are allegedly affected by a defendant's general policy, and the general policy is the crux or focus of the litigation, the commonality prerequisite is satisfied.").

The mere fact that each Class member may be entitled to a different dollar amount in damages does not affect this finding: "Class certification will not be prevented merely because damages must be determined separately for each Class member". *FirstCollect, Inc. v. Armstrong*, 976 S.W.2d 294, 298 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.); *Beresky*, 986 S.W.2d at 387; *TCI Cablevision of Dallas, Inc. v. Owens*, 8 S.W.3d 837 (Tex. App.--Beaumont 2000, pet. dism'd by agr.); *Angeles/Quinoco Sec. Corp. v. Collision*, 841 S.W.2d 511, 516 (Tex. App.--Houston [14th Dist.] 1992, no writ). Although not present here, even the existence of an arguable defense peculiar to different members does not necessarily destroy the entire Class. *Chastain*, 26 S.W.3d at 30; *Adams*, 791 S.W.2d at 289; *Stonebridge Life Ins. Co., v. Pitts*, 2006 Tex. App. LEXIS 4364 (Tex. App. -- Corpus Christi, May 18, 2006).

The elements of Plaintiff's claim that give rise to these questions of law and fact are uniform across all Class members. The standard for commonality is readily met; in fact, Hertz effectively conceded the commonality element at the certification hearing, focusing instead on the much more significant hurdle of whether these common questions predominate over

individual questions. That consideration is addressed in detail below. First, however, the Court addresses Hertz's two primary challenges to 42(a) certification are addressed.

### 3. Typicality

The typicality requirement is met when the evidence shows that the claims of the Class representatives have the same essential characteristics as those of the Class as a whole. *Union Pacific Resources Group, Inc., v. Hankins,* 51 S.W.3d 741 (Tex. App.--El Paso 2001); *Manning,* 914 S.W.2d at 613; *Chevron U.S.A. Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex. App.--El Paso, 1991, writ dism'd w.o.j.). To be typical, the representative's claims must arise from the same event or course of conduct giving rise to the claims of other Class members and must also be based on the same legal theories. *Hankins,* 51 S.W.3d at 751-752; *Dresser,* 847 S.W.2d at 372.

Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Adams,* 791 S.W.2d at 291. No such conflict exists here. A comparison of the claims of the Plaintiff named herein and those of the Class shows that the representative's claims are typical of the Class as a whole. Plaintiff is claiming that the standard FSC charge in connection with the terms of the rental agreement (1) violates the Texas UCC; (2) results in a rental price in excess of what was agreed to, thereby breaching the contract; and (3) is fraudulently and deceptively misrepresented because it is not for "fuel" and "service", but instead is primarily a hidden profit stream for Hertz.

The evidence before this Court is that the FSC is a corporate policy imposed by corporate locations and licensees like Texas South, Inc., as it was in this case. While Hertz contends that cannot be held legally liable in any way in connection with that charge, this contention was denied after Hertz moved for summary judgment. Hertz continues to contend that it has no input into, and gains no direct financial benefit from what its licensees collect for FSC charges.

Whether or not Hertz can prove those facts (Hertz counsel challenged Plaintiff in his deposition for not complaining *to Hertz* about the charge before filing suit; Gomez Dep. 117:11-23), there is evidence before this Court by which Plaintiff could establish corporate liability on a number of pled theories, based upon proof that the licensee defendant, and all licensees, charged the FSC consistent with Hertz corporate policy and practice. One of the cases Hertz urges this Court to follow is *Stonebridge Life Ins. Co., v. Pitts*, 2006 Tex. App. LEXIS 4364 (Tex. App. -- Corpus Christi, May 18, 2006). That case addressed typicality in a similar context, where the claim was that the defendant made uniform representations to the consumers it contracted with, just as Hertz did here. The Court of Appeals, in affirming a certification order entered by this Court, placed the focus on the defendant's conduct in applying its uniform charge in determining that each consumers resulting injury, as alleged, was the same: they were each improperly charged a premium As such, the typicality requirement was satisfied.

The fact that Plaintiff will be required to establish corporate liability upon the theories pled does not, as Hertz argues, create a "unique hurdle" that impermissibly distinguishes Plaintiff from those who rented from a corporate location. There is no conflict between Plaintiff and these corporate renters going to the very subject matter of the lawsuit, if there is any conflict at all. Everyone in the Class was charged an FSC in Texas after February 6, 2000, whether they rented from a licensee or from a corporate location. The charging of that FSC, arising out of a uniform written rental agreement in terms of the FSC, is the basis for Plaintiff's claim. "[L]ike commonality, the test for typicality is not demanding." *Treasure Chest*, 186 F.3d at 625; *see also San Antonio Hispanic Police Officers' Org. v. San Antonio*, 188 F.R.D. 433, 442 (W.D. Tex.1999).

298

When the claims of both "arise from the same event or practice or course of conduct ... [and] are based on the same legal theory, ... [the typicality requirement] may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other Class members." *De La Fuentes v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted). For instance, Texas courts have held that the existence of differing defenses against plaintiffs will not prevent Class certification based on the typicality requirement. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 613-14 (Tex.App.--Texarkana 1995, writ dism'd) (various defenses did not destroy typicality or commonality, *e.g.,* superseding cause, contributory negligence, failure to comply with warranty); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 373 (Tex.App.--El Paso 1993, no writ) (typicality not destroyed by defenses of limitations, lack of misrepresentation and ratification); *Adams v. Reagan,* 791 S.W.2d 284, 290-91 (Tex. App .-Fort Worth 1990, no writ) (claims primarily grounded on misrepresentations and omissions in "common core of documents" met typicality requirement); *Citizens Insurance Co. of America v. Hakim Daccach,* 105 S.W.3d 712, 726-7 (Tex.App.--Austin 2003, pet. filed) (Plaintiff's claims typical where he alleged "overall scheme" of sales). That is the case here.

Hertz's second challenge to typicality is founded upon a purportedly individual defense, that of voluntary payment. However, that defense is not supported in regards to Plaintiff's claims as asserted, or under controlling authority. Even if it was, it is a defense subject to Class-wide treatment, both in terms of Hertz's factual premise and in terms of controlling authority. Hertz argues that Plaintiff's testimony that "no one forced me" to pay the FSC gives rise to the voluntary defense as outlined in *BMG Direct Marketing v. Peake,* 178 S.W.3d 763 (Tex.2005). Hertz consistently argues that this testimony demonstrates that Plaintiff was not subjected to duress or coercion, and therefore is subject to that defense. Leaving aside the fact that Hertz never moved

for summary judgment on that ground, an absence of duress or coercion, though, is not the end of the inquiry. Hertz's analysis consistently leaves out the other requisite consideration for that that defense: It does not apply where there is an allegation of fraud. *Id.* at 776. It is also only applied where the consumer has full knowledge of the relevant facts. *Id.* "Full knowledge" was only visited upon Plaintiff after he filed suit and engaged in significant discovery. Additionally, it is questionable as to whether the defense would apply here regardless, since it is an equitable defense that is to be considered in light of all the facts. *Id.* at 776-77. As such, it will be considered in terms of the FSC and the totality of the facts. Here, if Plaintiff's transaction, wherein he was told of the FSC and signed a disclosure document and then failed to re-fuel is sufficient to trigger application of the defense, then it is triggered as to every member of the Class, because each engaged in the same course of conduct regarding the FSC as the Plaintiff did.

The Court finds that based upon the allegation of fraud in this case, along with the additional requisites referenced above, the voluntary payment defense would not operate as a bar to Plaintiff's individual claim. Furthermore, there is nothing unique about Plaintiff's transaction in the context of the causes of action pled that would make the application of any such defense unique to the defendant. If the disclosure of the FSC and the right to avoid it by refueling yourself makes the payment voluntary, even in the face fraud and contract claims, then it is applicable to everyone who could have avoided the disclosed charge by refueling themselves. A defense subject to Class-wide application, if it even applies at all, does not raise typicality challenges.

Hertz attempts to distinguish *Alford* by arguing that in *Alford*, there was no discussion of the charge at issue, no opportunity to decline it, and no signed acknowledgement of the charge. Even assuming those facts were as Hertz contends, they do not change the fact that both charges were represented as something they were not. At bottom, the details of Plaintiff's transaction itself

300

at the counter or when he received his bill, as asserted by Hertz, are no more relevant to the claims in this case than whether the person over-charged by the dealerships in *Alford* purchased a red or blue car, asked about financing, or ordered bucket seats. The issue is the uniform written charge. If such defensive tactics were allowed, any Class action could be readily defeated no matter how sound, simply by the device of asserting differences among Class members that are not part of the claim. The Class claims arise from the same course of conduct and are based on the same legal theories as those of the named Plaintiff. Nothing more is required, and therefore, the typicality requisite has been met. *Microsoft Corp.*, 914 S.W.2d at 613.

### 4. Adequacy of Representation

In order to satisfy the adequacy, the Class representative has the burden of demonstrating that she will fairly and adequately protect the interests of the absent Class members. The adequacy of representation requirement consists of two elements: (1) there must be an absence of antagonism or conflict between the representative's interests and those of the Class member, and (2) it must appear that the representative, through his attorneys, will vigorously prosecute the Class claims. *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

As to the first requirement of the analysis, there must be no significant conflicts of interest between the Class Representative and the absent Class members. *See Mullen v. Treasure Chest Casino, LLC* 186 F.3d 620, 625-26 (5th Cir 1999, *cert. denied*); *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 273 (E.D.Tex. 1985), *aff'd,* 782 F.2d 468 (5th Cir. 1986). Only a conflict that goes directly to the subject matter of the litigation will defeat a party's representative status. *Manning*, 914 S.W.2d at 614; *Health & Tennis Corp. of America*, 928 S.W.2d at 598. A sufficient alignment of interests exists when "all Class members are united in

asserting a common right, such as achieving the maximum possible recovery for the Class." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir.), *aff'd following remand*, 659 F.2d 1322 (5th Cir. 1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294, *and cert. denied*, 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309 (1982). Plaintiff wishes to recover the maximum amount permissible for the Class and has asserted common claims and causes of action which, if proven, would achieve that recovery.

Hertz's challenges to adequacy are premised on the existence of a conflict created by the same two contentions: (1) renting from a licensee, and (2) the voluntary payment defense. These same challenges fail to negate adequacy just as they failed to negate typicality. Courts have held that typicality and adequacy are closely related, because "demanding typicality on the part of the representative helps insure his adequacy of representation." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n. 27 (5th Cir. 1982), *cert. denied*, 463 U.S. 1207 (1983). As stated *supra*, Mr. Gomez's claims are certainly typical of the Class. He is also an adequate Class representative.

The Court finds that the Class representative's interests are not antagonistic to other Class members, but rather are aligned. There is no conflict between Plaintiff and the Class, let alone one which "goes directly to the subject matter of the litigation". Regarding that subject matter, the FSC, the Court finds that Mr. Gomez has the same grievances and interests as the Class.

The critical question as to the second prong is whether the Class representative, through his lawyers, will vigorously prosecute the Class claims. *Citizens Ins. Co. of America v. Hakim Daccach*, 105 S.W.3d 712 (Tex. App.--Austin 2003, pet. filed) (emphasis in opinion); *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 652 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.); *see also Rio Grande Valley Gas v. City of Pharr*, 962 S.W.2d 631, 644 (Tex. App.--Corpus

Christ 1997, pet. dism'd). The Court has considered the pleadings, representations of Class Counsel, and the deposition testimony of Mr. Gomez, and finds that Mr. Gomez, through his attorneys as Class Counsel, will vigorously pursue the Class claims. The Court finds that Mr. Gomez's testimony and the representations of Class Counsel demonstrate that he has sufficient familiarity with the litigation and belief in the legitimacy of his claims. The Court finds that Hertz's limited challenge to the contrary is conclusory, and without factual support.

The Court finds that Mr. Gomez has demonstrated that he understands the basis for his claims, and that by meeting with his attorneys during this litigation and testifying at his deposition, he has sufficiently demonstrated that he will vigorously pursue Class claims through his attorneys. The Court also relies upon the representations of Class Counsel in this regard. The adequacy inquiry also requires an assessment of the qualifications of Class Counsel. In Texas, the qualifications and experience of Class counsel are of greater consequence in determining adequacy of representation than the knowledge of the Class representatives. *Weatherly*, 905 S.W.2d at 652; *Manning*, 914 S.W.2d at 614. In addition, counsel's own representations to the trial court of matters within counsel's personal knowledge, *e.g.*, regarding the litigation qualifications and trial experience of the lawyers handling the case, is proper evidence on the issue of adequacy. *Snyder Communications*, 94 S.W.3d at 243 (*rev'd on other grounds*).

Pursuant to TEX. R. CIV. P. Rule 42(g)(1)(c)(1), the Court finds that Class Counsel are sufficiently qualified and experienced to prosecute the action vigorously, and intend to do so. The Court reviewed the experience in similar cases as presented by Class Counsel, and is familiar with Class Counsel from prior actions before this Court. Class Counsel will commit the necessary resources to representing the Class and can afford to do so. In further accordance with

TEX. R. CIV. P. Rule 42(g)(1)(c)(1), the Court has considered the fact that this case, which has been followed by similar cases, originated with this Plaintiff and her Class Counsel, and has been developed through effective discovery conducted by her and Class Counsel. Class Counsel's qualifications and adequacy is not contested by Hertz.

**This Action is Maintainable as a Class Action under TEX. R. CIV. P. Rule 42(b)(3)**

Having determined that all prerequisites of TEX. R. CIV. P. Rule 42(a) are met, this Court must decide whether the Class(es) is maintainable under one or more of the categories described in Rule 42(b). Plaintiff urges that the Class is maintainable under Rule 42(b)(3). Rule 42(b)(3) requires the court to determine that "the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. Rule 42(b)(3); *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Pursuant to TEX.R.CIV.P. Rule 42(c)(1)(D)(vi), this Order herein sets forth the reasons why common issues predominate this case.

The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Bernal*, 22 S.W.3d at 434. The parties and this Court acknowledge that the predominance requirement is "one of the most stringent prerequisites to Class certification." *Id.* at 433. Common issues will not predominate "[i]f, after common issues are resolved, presenting and resolving individually issues is likely to be an overwhelming or unmanageable task for a single jury." *Id.* at 434.

In deciding whether common issues predominate, this Court need only identify substantive law issues that will control the litigation; the Court does not weigh the substantive merits of each Class member's claim, nor must Plaintiff make any extensive evidentiary showing of his right to prevail. *Nissan Motor Co. v. Fry*, 27 S.W.3d 573 (Tex. App.--Corpus Christi 2000, pet. denied). Instead, certification is a pragmatic inquiry that tests whether the Class is sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Class certification process is designed to assure the Court that adjudicating related claims in a single proceeding will conserve resources and yield economies of scale. *General Motors Corp.*, 916 S.W.2d at 952-53; *Neely v. Ethicon, Inc.*, No. 1:00-CV-00569, 2001 WL 1090204 at *10 (E.D. Tex. 2001).

The most recent challenge to predominance, and the impetus for the Court permitting post-submission briefing, is the matter of the scope of the Class definition. Hertz contends that the Class definition included out-of-state rentals, thereby triggering the potential application of multiple state laws. If that were so, Class certification would be difficult, if not impossible. Plaintiff acknowledged this, cited the history of the case including discovery requests in arguing that the case was always limited to just Texas transactions, stipulated to that limitation and amended his live pleadings to comport with that limitation. Regardless of which party's historical recitation and linguistic interpretation is correct, the proposed Class that this Court understands it is being asked to certify is a Texas-only Class; meaning, Texas residents who rented vehicles in Texas and who were charged an FSC on those rentals. Regardless of what other challenges to certification may exist, conflict of law is not one them.

Plaintiff's UCC and contract Class claims are based upon the standard, uniform written rental agreement signed by each Class member and the attendant FSC. If Plaintiff has a UCC or

contract cause of action against Hertz for over the FSC, then every member of the Class does. If Hertz violated the applicable law in charging its FSC as to one Class member, it violated it as to all -- in exactly the same manner. The finite and straightforward nature of Plaintiff's contract claims thereby clearly demonstrates the feasibility and practicability of submitting this case to a single jury. Not only will common issues predominate the trial of this case, there are *no* individualized questions left to submit to the trier of fact as to the contract claims. Neither individual intent, nor individual knowledge, nor individual reliance are elements of, or prerequisites to, Plaintiff's UCC and contract Class claims. *See Collins v. Guinn*, 102 S.W.3d 825 (Tex.App.--Texarkana 2003, pet. denied). *Chevron U.S.A. Inc. v. Kennedy*, 808 S.W.2d 159, 162 (Tex.App.--El Paso 1991, writ dism'd w.o.j.); *Hi-Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 387 (Tex.App.--Beaumont 1999, pet. denied) (issue of how batteries were sold predominated). The same is true as to the UCC claims, which will be determined by the Court as set forth in the Trial Plan.

Hertz contends that the Thirteenth Court of Appeals holding in May in *Stonebridge Life Ins. Co., v. Pitts*, 2006 Tex. App. LEXIS 4364 (Tex. App. -- Corpus Christi, May 18, 2006), which upheld a Class certification order entered by this Court, weighs against certification in this case. The Court disagrees. Hertz's counsel argued at the certification hearing that *Stonebridge* was distinguishable because it involved a single course of conduct that was identical to everyone. The only difference between this case and *Stonebridge* is that in the latter, Plaintiff was alleging only a single cause of action. The commonality between this case and *Stonebridge* is best summarized by the Thirteenth Court of Appeal's opinion:

> Here, the trial court determined that the claims of the Class members arose from a common course of conduct by appellants that was identical with regard to each individual consumer, i.e., each consumer was subjected to a common telemarketing effort that included prepackaged telemarketing scripts, which were

not deviated from by appellants' representatives. The question that now remains to be decided is whether appellants' use of consumer responses to those scripts as implied consent to automatic credit-card-debiting constitutes a cause of action for money had and received. If the finder of fact determines that the use of these scripts, followed by actual debiting of accounts, constitutes an action for money had and received, the Class members will have established a common right to relief. If, however, the finder of fact determines that the facts alleged to not constitute a claim for money had and received, the litigation with regard to all Class members will be over, and the Class action will have efficiently disposed of all these claims with a single inquiry.

The facts of this case are in line with those of *Stonebridge*. They are also in line with the primary predominance opinion relied upon by the Thirteenth Court of Appeals in *Stonebridge*, the First Circuit's opinion in *Smilow v. Southwestern Bell Mobile Syst., Inc.*, 323 F.3d 32 (1ST Cir. 2000). Predominance existed there because the language at issue in each contract was identical, just as the FSC is substantively identical here. Nowhere is the profit component disclosed; nowhere is the true nature of the charge disclosed, i.e. the fact that the FSC costs Hertz no more than the FPO, despite the 100%+ difference in price. *Smilow* concluded that the unfairness of the charge based on its amount and nature predominated as the controlling issue, and that potential individual defenses and dollar amounts did not switch the focus from common issues to individual ones. *Id.* at 39-40.

Hertz's co-defendant TSI made a single independent challenge to predominance under 2A-108 and 2A-504 in which it was not joined by Hertz. TSI argued that only consumer leases, defined as personal, family or household leases, can use 2A-108 and 2A-540 as grounds for recovery. That argument is inconsistent with the clear wording of 2A-108, and the absence of any such wording in 2A-504. 2A-108(a) is in no way limited to consumer leases. Upon a finding of unconscionability, "refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the

application of any unconscionable clause as to avoid any unconscionable result." Here, Plaintiff's request that the Court return the difference between the FSC and the FPO falls within those parameters. No similar damages restrictions, or applications, are implicated by Plaintiff's claim under 2A-504.

Hertz further contends that individual issues predominate in regard to Plaintiff's UCC 2A-108 claim (but notably, not his 2A-504 claim) based upon the *Wall* and *Peltier* decisions. The Court finds both of those decisions distinguishable. In *Wall*, car buyers got charged a "Consumer Services" charge on their vehicle invoice, which included coupons for services. They sued because they claimed the services didn't have any real value. The difference between *Wall* and this case, and between *Wall* and the more applicable *Alford*, is that in *Wall* the charge was actually for consumer services. It was what it said it was for. It may have been of limited value, but that general term was accurate. Here, the FSC charge is not exclusively for Fuel and Service, just like in *Alford*, where it wasn't for tax. *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396, 405 (Tex. App. – Texarkana 2002, pet. denied, pet. for rehearing denied). Furthermore, certification in *Wall* was denied in large part because it was an individual question as to damages calculations. What was the value of the services, who would have used what services, etc. Here, the damage calculations are uniform and simple. According to Plaintiff, the appropriate measure of damages is FSC minus FPO equals damages. Hertz has not challenged this measure, nor suggested an alternative measure.

In *Peltier*, the dealership defendants did not represent anything; rather, they failed to disclose that the loan they acquired for the buyer involved a little kickback form the lender to them. Also, the unconscionability claim in *Peltier* was based upon DTPA section (b)(23), presently renumbered at (b)(24)). That section expressly requires proof that the consumer would

not have entered into the transaction had he or she known the truth. That requirement is not an element of any of Plaintiff's claims in this case. The Court agrees with Plaintiff that *Peltier* is limited to claims involving the strong "but for" requirement under DTPA § 17.46(b)(24). Plaintiff in turn noted *Peltier's* statement that certain cases involving fraud and misrepresentation are appropriate for Class certification; just not all such cases.

This is a case where Plaintiff's claim for fraudulent misrepresentation, as will be demonstrated in the proposed Trial Plan, is subject to Class-wide treatment, because it is based upon a uniform, written misrepresentation, and reliance is evidenced by the act of paying that express charge at the conclusion of the rental. In *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693-4 (Tex. 2002), the Texas Supreme court held:

> The 20,000 Class members in the present case are held to the same standards of proof of reliance – and for that matter all the other elements of their claims – that they would be required to meet if each sued individually. This does not mean, of course, that reliance or other elements of their causes of action cannot be proved Class-wide with evidence generally applicable to all Class members; **Class-wide proof is possible when Class-wide evidence exists.**

(emphasis added.) Here, such "Class-wide evidence" exists. When a Class member returns his vehicle with less fuel than when he rented it, he is assessed a charge on his invoice stating "Fuel and Service" or "FUEL AND SVC". Each Class member pays that line-item "Fuel and Service" charge. The act of paying demonstrates that they are relying upon the charge as what it states: A charge for fuel and for service. The alleged fraudulent misrepresentation is that the consumer is told it is for "Fuel" and "Service" and it is not; that it increases the actual overall rental cost under false pretenses, and it does it in an identical manner each time it is uniformly assessed and paid. Based on those allegations, the Court finds this claim falls within the parameters of *Schein:*

> **If a plaintiff could prove reliance in an individual action with the same evidence offered to show Class-wide reliance, then the issue is one of law**

**and fact common to the Class.** The question the court must decide before certifying a Class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones.

*Id.* (emphasis added).

In *Alford Chevrolet-Geo*, a case the Texas Supreme Court twice declined to review, the court of appeals held "[t]he allegations are that the consumers paid a tax they did not owe because they were billed for the tax by the Dealers. That alone is an allegation of reliance." *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396, 405 (Tex. App. – Texarkana 2002, pet. denied, pet. for rehearing denied). The Alford court discussed the issue in great detail, with the required rigorous analysis:

> The Dealers also take the position that at the least each Class member must demonstrate he or she relied on the misrepresentation. The allegations are that the consumers paid a tax they did not owe because they were billed for the tax by the Dealers. That alone is an allegation of reliance. They direct this court to federal opinions involving other statutory forms of recovery that require some type of reliance to justify damages. They also direct this court to two Texas cases that only allowed Class certifications to proceed on proof that the misrepresentations were identical in all cases. Those opinions also contained language warning about the damages of disintegration of a Class lawsuit if proof of reliance turned out to require myriads of individual trial to show reliance on an individual basis. *See Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196 (Tex. App.-Austin 2000, pet. Dism'd w.o.j., reh'g of pet. granted); *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764 (Tex. App.-Fort Worth 1986, no writ).
>
> Dealers focus on language abstracted from *Brister* that "fraud in which there were material variations in the representations made or in the kinds or degrees of reliance involved are not suitable for Class action." *Brister*, 722 S.W.2d at 774.
>
> In this case, if we take the *Brister* language as our mantra, there is no indication from the discovery that there are any material variations in the written representations made. We find the Dealers' argument interesting, but also recognize that in any other context, the Dealers would likely prefer that we not create a new rule of law allowing anything outside the written contract to be considered in determining the viability or intent of an unambiguous contract.

The Houston First Court of Appeals recently addressed a similar matter. In that case, a storage company billed its customers for insurance, which the company then did not purchase. The court found the written misrepresentation to justify Class certification, while acknowledging that other cases had had that oral misrepresentation have been found not to justify Class certification because they necessarily required separate proof. The court found that the charge itself was sufficient for the purpose of certification. *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). The court concluded that the basis of the lawsuit was the defendant's uniform conduct in its billing practices and affirmed the certification.

Sole causation is not required either by statute or case law. It therefore appears that a single producing cause (or reliance) issue -- or perhaps a very few variations on that these -- would be sufficient to fairly cover all of the defendants. Under those circumstances, we conclude the trial court did not abuse its discretion by certifying the Class and entering a trial order.

The allegations are common to all the plaintiffs. The plaintiffs may clearly seek to prove that the written statements are misrepresentations, while the defendants' attempts to prove otherwise amount to, at most, marginally differing defenses. As pointed out in *Chastain*, Texas courts have held that even if defendants have a defense against claims by some (but not all) Class members, the Class may still be certified. *Chastain*, 26 S.W.3d at 30 (citing *Sun Coast Res., Inc.*, 967 S.W.2d at 537; *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 613 (Tex. App. -Texarkana 1995, writ dism'd)).

*Id.* at 405-6.

This accepted theory of reliance, recognized in *Schein* and relied upon in *Alford*, has been referred to by one Texas federal court as the "invoice theory" of reliance. The theory -- where the payment of the invoice evidences reliance -- was recognized by the U.S, District Court for the Southern District of Texas in *Sandwich Chef II*, 202 F.R.D. 484 (S.D. Tex. 2001). There, each Class member was overcharged by means of an inflated invoice. Individual reliance was not an issue because the act of paying the invoices was sufficient to establish circumstantial evidence of reliance. *Id.* at 500. This circumstantial evidence consisted of proof that the

invoices contained a uniform misrepresentation -- the inflated premiums -- and proof that they were paid. *Id.*

In reversing certification, the Fifth Circuit did not reject the "invoice theory" as a way to meet the reliance element. It merely rejected its application where the inflated premiums were in many instances the product of negotiations between the parties, settled upon with full knowledge of many in the Class that the charges were inflated. *Sandwich Chef III*, 319 F.3d 205, 220 (5TH Cir. 2003). Those Class members could not have detrimentally relied upon charges they knew were inflated by amounts which they had previously agreed to pay. *Id.* No such facts would bar the application of the "invoice theory" to the present case. Here, there are no individual negotiations over the FSC. The fact that the dollar amount of the charge may vary does not effect the allegation that it was for profit based on the admitted cost components. No one knew the alleged nature of the FSC and its purported inflation until Plaintiff conducted discovery in his individual case. When it comes to that FSC, the Court finds no evidence of any individual considerations. The circumstantial proof of reliance presented by the Plaintiff in this case is that the charge was misrepresented as a Fuel and Service Charge, and the consumer paid it.

The Court was provided with authority from other jurisdictions recognizing that proof of payment of a uniform charge can itself provide the requisite proof of detrimental reliance. *Klay v. Humana, Inc.*, 382 F.3d 1241 (11TH Cir. 2004); *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 567 (E.D. Va. 2000); *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 149 (E.D. Pa. 1976 (defendant uniformly billed consumers for shipping insurance which it never actually purchased). While not controlling, the Court finds these cases instructive, and indicative of situations where the *Schein* parameters on Class-wide fraud would be met.

Hertz also argues that there are too many different contracts at issue: One for consumers, one for Gold Club members, and one for select corporate or government accounts. And that those contracts are separately negotiated. Hertz cites two cases, *Enron* and *Wall*, for the proposition that different contracts negate certification. The Court finds those cases are distinguishable because the relevant terms varied in substance and application. Here, the relevant terms do not vary in substance and application.

Hertz argues that certification should be denied because in one contract they refer to the charge as a "Re"fueling Service Charge instead of a Fuel and Service charge. Hertz does not identify any substantive differences between these two terms, or between any refueling charges imposed under any of the "differing" contracts. Its argument that most renters are reimbursed by their employer is irrelevant; the employers are members of the Class if they were charged (via their employee's rental) an FSC on a Texas rental after February 6, 2000. The Court finds that there is no evidence of any difference between the FSC, when it applied, and what it consisted of, regardless of which agreement or arrangement one rented under. Whether a renter is a Gold Club member or not, or works for Dell or the government or otherwise rents under a special rate, the refueling terms are substantively identical. The FSC exceeds the FPO in price, but not in cost. Hertz has not presented any evidence that this fact varies across contracts. That fact is the gravamen of Plaintiff's claim, and the claim of the Class. As such, this case is in line with *Chastain* and *Alford*.

In *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24 (Tex. App.--Houston [1st Dist.] 2000, pet dism'd w.o.j.), the defendant uniformly billed its customers for insurance, which it then did not purchase. (Similarly, Hertz charged for Fuel and Service, and the money purportedly was not used primarily to purchase either.) The court found that the written

representation was uniform, and upheld certification based on the fact that the basis of the lawsuit was defendant's uniform conduct in its billing practice.

The same is true as to *Alford Chevrolet-Geo*, where dealers were charging taxes that the customers were not legally obligated to pay. Those "taxes" were embedded in the standard sales document. That sales document was uniform, and everyone who contracted under it and paid the false "tax" was an appropriate member of the properly certified Class. Notably, the court held that the defendants, who drafted the unambiguous contracts, were prohibited from introducing parol evidence attempting to explain contracting differences and nuances. *Id.* at 406. The Texas Supreme Court denied review -- effectively twice. The Court finds that just as in *Alford Chevrolet-Geo*, Plaintiff's claims focus primarily on a uniform charge, the legal effect of the charge, and the resulting damages. TEX. R. CIV. P. Rule 42(c)(1)(D)(iv). The Court finds and concludes that if Hertz is legally liable to Plaintiff under the claim asserted, it is liable to all members of the Class -- in exactly the same way. The Court further finds that the finite and straightforward nature of Plaintiff's claims clearly demonstrates the feasibility and practicability of submitting this case to a single jury. As such, issues common to the Class predominate. Plaintiff presented facts and evidence upon which one could conclude that not only do common issues predominate in this case, but that there are, in fact, no individual issues requiring consideration. There are no individualized issues in this case -- neither reliance, nor unconscionability, nor the determination of damages (the single methodology presented for calculation is uniform) -- and as such, the predominance requirement is readily achieved. TEX. R. CIV. P. Rule 42 (c)(1)(D)(iii).

For these same reasons, Hertz's testimony that certain Class members are smarter and earn a higher income is inconsequential. First, that is going to be the case whenever you gather a

group of consumers in a Class. The supposed import of this knowledge and wealth here is that these certain individuals could not have been defrauded. The evidence before this Court does not support that distinction. These "smarter, higher earners" were not told anything different about the refueling service charge than any other renter. Nothing about their contracts or circumstances creates a conflict or individualizes their claims. If Plaintiff is entitled to recover under the theories pled, everyone who rented and was charged the FSC (or "R"SC) in Texas is as well.

The fact that the dollar amount each is entitled to may differ (a factor of the FSC and FPO prices before the latter is subtracted) does not affect predominance. The methodology for calculation presented to this Court is common. Determining the proper method for measuring damages is a question of law for the court. *Allied Vista Inc. v. Holt*, 987 SW2D 138, (Tex. App.-Houston [14th Dist.] 1999, pet. denied). Based on Hertz's interrogatory answers, damages here can be calculated by subtracting the FPO from the FSC at each location. But Class certification would not be prevented here even if damages have to be mathematically calculated separately for each Class member. *Hi-Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 387 (Tex. App.—Beaumont 1999, no pet.). By way of example:

> [E]ach sale resulting in a miscalculated commission would not have to be examined, Rather [Plaintiff] could present adequate evidence indicating MCI's alleged pattern of action, the fact-finder could make its determination regarding MCI's liability, and the parties could then present the court with summaries of their positions on the issue of what MCI paid and what MCI actually owed. In sum, the damages allegedly suffered by the proposed Class members were all of the same type, and the calculation of damages following a ruling in favor of the Class would be a largely mechanical task.

*Snyder Communications*, 94 S.W.3d at 247 (quoting *MCI Telecomm*, 124 F.R.D. at 678), *rev'd on other grounds*. *See, also, Hi-Lo Auto Supply LP v. Beresky*, 986 S.W.2d 382, 387 (Tex. App.-Beaumont 1999, pet. denied); *Chevron U.S.A., Inc.*, 808 S.W.2d at 162 (although individual

amounts of royalties owed may differ, commonality existed where wrongfully withholding royalties was standard conduct). Both *Chastain* and *Alford* Class members were entitled to a different dollar amount of damages. The calculation of damages in *Chastain* was a function of the moving company's charges for insurance, which in turn was based upon the value of what was being moved; hence, the amount paid, and amount owed as damages, would necessarily vary. Likewise with *Alford Chevrolet-Geo* -- the damages -- the amount of tax over-charged -- would vary based upon the purchase price of the car. The Court notes that that what made those cases certifiable was that all the Class members received the same written contract terms, and the lawsuits were over those terms.

At this point, Hertz has not adequately presented any basis for asserting its potential affirmative defenses, or any other defense to the asserted claims. If anything, the documents of record in this case appear thus far to weigh against individual defenses. But even if this Court were to assume the existence of an arguable defense peculiar to different members, like a defense of limitations or waiver, the Court finds that this would be insufficient to negate certification in this case. *Chastain*, 26 S.W.3d at 30; *Adams*, 791 S.W.2d at 289; *Citizens Insurance Co. of America*, 105 S.W.3d at 727 (possible existence of arbitration clauses for some Class members would not defeat certification).

This Court is bound to conduct a rigorous analysis of how this case will be tried. Accepting Hertz's asserted affirmative defenses at face value is not consistent with a rigorous analysis. Without deciding the merits of the claims, this Court must determine whether there is any basis in the record for these asserted defenses. If a defendant were permitted to simply assert a laundry list of hypothetical defenses to defeat certification, cases which meet all the requirements of TEX. R. CIV. P. Rule 42 would be improperly rejected. The Court finds that this

rigorous analysis is necessary notwithstanding the wealth of Texas cases which hold that the existence of individual defenses will not necessarily prevent certification under TEX. R. CIV. P. Rule 42. Pursuant to TEX. R. CIV. P. 42(c)(1)(D)(i), the analysis of these affirmative defense, only one of which was urged in certification briefing, is set forth in the Court's Trial Plan, *infra*.

The Texas Supreme Court in *Bernal* summarized the predominance requirement by stating as follows: "Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for other Class members to file proofs of claim." *Bernal*, 22 S.W.3d at 434; see also *TCI Cablevision of Dallas, Inc. v. Owens*, 8 S.W.3d 837 (Tex. App -- Beaumont 2000, pet. dism'd by agr.); *Beresky*, 986 S.W.2d at 387 (predominance existed since individual issues could be resolved by filing individual proof of claims). That is precisely the situation before the court in this case. Here, the following issues predominate: (1) whether charging the FSC violates statutory and common law; (2) whether Class members are entitled to damages in connection with that charge; and (3) the amount of damages. *See Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396 (Tex.App.--Texarkana 2002, pet. denied).

## A Class Action is the Superior Method of Adjudication of These Claims

The second requirement of TEX. R. CIV. P. Rule 42(b)(3) is that the Class action mechanism must be the superior method of adjudication, such that any difficulties that might arise in the management of the Class are outweighed by the benefits of Classwide resolution of common issues. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642,654 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.). The rule sets forth four different considerations to assist the court in making a superiority decision: (a) the interest of members of the Class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature

of any litigation concerning the controversy already commenced by or against members of the Class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a Class action.

The first element, superiority, is the degree to which Class members have an interest in controlling the prosecution of this lawsuit. In the instant case, the Court finds that Class members have no significant interest in controlling their own individual lawsuits because their individual damages are not sufficient to justify litigation, and because Class certification is particularly appropriate when purchasers seek redress for alleged widespread commercial abuses. It is not economically feasible for each Class member to bring a claim that is likely valued at less than $100. *Stonebridge Life Ins. Co., v. Pitts*, 2006 Tex. App. LEXIS 4364 (Tex. App. -- Corpus Christi, May 18, 2006). Furthermore, the Court has not been presented with any evidence that any other litigation pending at this time affects the Class as defined herein. As to the third element, the Court finds that it is desirable to concentrate the litigation of these claims in a single forum. There is no reason to further burden an overloaded court system when one adjudication will simply and efficiently resolve the claims of thousands. *Nissan*, 27 S.W.3d at 583 (stating that Class certification is appropriate where repeated litigation of the common issues in individual actions is grossly inefficient, exorbitantly costly, and a waste of judicial resources). There are no other practical methods of adjudication for these claims. TEX. R. CIV. P. Rule 42(c)(1)(D)(v). Hertz's argument that this risk is non-existent because it has not yet occurred is unsupported by any case law, and is ultimately unavailing. Additionally, this litigation has been ongoing for three years, and substantial discovery has been completed. Documents that have not previously been produced or available without court order are now available, and can benefit the

adjudication of Class claims. *Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d at 735, 743 (Tex. App -- Austin 1998, no pet.) This has also given this Court ample opportunity to develop an understanding of the facts, and the contentions of the parties. *Id.*

Specifically in regards to the superiority standard, the litigation here turns on the answer to a single liability question, i.e. the legality of the FSC. If a jury determines that Hertz is not liable for the manner it which it charges and allocates the FSC, then the case is over and the Class claims will have been effectively resolved. If liability is found, then all that remains is for the Class member to file a proof of claim, and Hertz will have the record of the FSC and FPO at the rental location on the date of rental. No further litigation is necessary.

The final inquiry for superiority is "the difficulties likely to be encountered in the management of the Class action." Certification is proper where any difficulties which might arise in the management of the Class are outweighed by the benefits of Classwide resolution of common issues. *Nissan*, 27 S.W.3d at 583; *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 611 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.). The Court makes the following findings and conclusions as to superiority and manageability: given the size and geographical scope of the Class, joinder and intervention are not superior alternatives, or even possibilities; the claims in this action are particularly suited for Class action treatment because Hertz possesses relevant information concerning the Class and precise information as to how and to what extent the Class has been damaged by its actions; the manageability of the litigation as a Class action is demonstrated by the fact that the Class claims can be efficiently submitted to a single jury; and there are no difficulties in managing the Class that would outweigh the efficiency gains. Superiority is therefore met. TEX. R. CIV. P. Rule 42(c)(1)(D)(vii).

## Trial Plan

Finally, the Texas Supreme Court has directed that the trial court indicate in certifying a Class how claims will be tried so that compliance with TEX. R. CIV. P. Rule 42 is assured. *Bernal*, 22 S.W.3d at 435. The most recent amendments to TEX. R. CIV. P. Rule 42, specifically 42(c)(1)(D)(viii) state that such a plan is necessary to address how issues affecting *only individual members* will be tried. The Court is setting forth a Trial Plan notwithstanding its conclusion that there are no such individual issues. Here, the FSC set forth in the written rental agreement is either actionable in every instance, or it is actionable in none. The Plan is based upon Plaintiff's submission. Hertz did not submit a Trial Plan, nor did it comment on or critique Plaintiff's proposed plan. Because all issues in this case are common, the trial plan can be relatively simple, and would require only one jury and one trial. The Court sets forth the following Trial Plan:

1. Through a bench trial or other summary disposition *see Farmers Ins. Exchange v. Leonard*, 125 S.W.3d 55 (Tex.App. -- Austin, 2003, no pet.) and consistent with 2A-108's directive that the parties present evidence on this issue, the Court will determine as a matter of law whether the FSC is unconscionable. Unconscionability is not determined by statutory elements; it is determined by applying the facts of each particular case to a common law standard. The defenses set forth below as asserted by Hertz will be presented to the Court as well. If the Court determines liability exists, the measure of damages the Court can consider upon such a finding is set forth in the statute; it is primarily to limit the application of the unconscionable clause in the context of the overall contract. That is consistent with the only measure suggested to the Court, and supported by the evidence to date, which is the FSC minus the FPO.

2. The issues raised by 2A-504 are traditionally issues of law for the Court, and will be handled in the same manner as the 2A-108 claim. The Plaintiff will present evidence that the return with insufficient fuel is a breach, act or omission triggering review by the Court, and that the resulting FSC is not reasonable in light of the then anticipated harm to Hertz. Plaintiff contends that "then anticipated harm" is quantified by the FPO. The defenses set forth below as asserted by Hertz will be presented to the Court as well. If liability is found to exist, the Court will measure damages by the statutory formula.

3. The Plaintiff will then present his individual claims to the jury. Those claims are for breach of contract and fraudulent misrepresentation.

4. The elements of a breach of contract cause of action are (1) the existence of a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach of the contract under common law by Hertz; and (4) damages. Plaintiff will present evidence that the charge exceeded what was contracted for, and that the FSC was not a valid liquidated damages clause, but rather a penalty resulting in contract damages. Upon a finding of liability, the resulting damages would be calculated by the only measure suggested to the Court, and supported by the evidence to date, which is the FSC minus the FPO.

5. The elements of fraudulent misrepresentation are (1) a material representation; (2) which was false; (3) Hertz knew it was false; (4) Hertz made it intending for consumers to rely and act upon it, and they did; and (5) damages. The manner of proof of those claims is set forth in this Order, and will be based upon the same evidence and practice as the claims set forth above. Upon a finding of liability, the resulting damages would be calculated by the only measure suggested to the Court, and supported by the evidence to date, which is the FSC minus the FPO.

6. Unless a directed verdict is appropriate at the close of Plaintiff's case, his case will be presented to the jury for determination.

7. The jury will be asked to determine whether Hertz breached its contract with the Plaintiff, and whether it fraudulently misrepresented the FSC. The jury will be asked to consider any valid potential defenses raised by Hertz. Hertz has asserted defenses of voluntary payment, waiver, estoppel, ratification, and accord and satisfaction. If any of these affirmative defenses are valid as to Plaintiff, they are valid as to all Class members.

8. Pursuant to TEX. R. CIV. P. 42(c)(1)(D)(i), the Court must address the elements of each potential defense. The Court does so even though the only defense asserted by Hertz as a basis for denying Class certification is the voluntary payment defense.

9. The voluntary payment defense is equitable in nature, and states that money voluntarily paid with full knowledge of all the facts and without fraud, deception, duress, or coercion cannot be received back. It is a defense that need not be applied where the rationale for its existence does not exist. Based on the evidence presented here, no Class member could have had full knowledge of all the facts regarding the FSC's true nature -- that it is mostly for profit and not "fuel" or "service" -- Hertz contests merely stating the term FSC on the rental documents sufficiently provides all the facts and full knowledge, then the voluntary payment would bar the claims of the entire Class. There is no difference between what Class members knew about the FSC or its elements and calculation, all of which Hertz itself calls "confidential", and which Plaintiff only discovered after filing suit and engaging in extensive litigation and discovery. Additionally, the Texas Supreme Court recently ruled where fraud is alleged, the defense does not apply. *BMG Direct Mktg. v. Peake*, 178 S.W.3d 763 (Tex. 2005). Still, it is a defense that if applied, it could be applied Class-wide. No Class members "voluntariness" differed from

another's, in the context of the alleged fraud and the knowledge available to this lawsuit. The mere act of payment alone, or the failure to contest the charge at the counter, has never been held to be per se voluntary under the strictures of that defense. Here, if Plaintiff's transaction, wherein he was told of the FSC and signed a disclosure document and then failed to re-fuel is sufficient to trigger application of the defense, then it is triggered as to every member of the Class, because each engaged in the same course of conduct regarding the FSC as the Plaintiff did.

10. Waiver, another defense asserted by Hertz, requires intentional relinquishment of a known right. Again, as with voluntary payment, the consumer has to know that the FSC charge is actionable, or he cannot waive his claim. What was known about FSC was limited to what was on the contract: the words FSC and the representation that it was for fuel and for the service of refueling. If that is sufficient to impose knowledge, then it is so for all Class members. If it is not, then no Class member has waived his claims.

11. Ratification involves approval by act, word, or conduct, with full knowledge of the facts of the earlier act, and with intention of giving that earlier act validity. Again, like voluntary payment, "full knowledge of the facts" is necessary. That full knowledge either exists on the face of the rental documents or it does not, for everyone in the Class. Estoppel is another equitable defense raised by Hertz. The elements of estoppel are a promise, foreseeably relied upon by the promisor, with substantial reliance by the promise to his detriment. If the doctrine exists to prevent injustice, then it should operate in this case to bar all Class members' claims, or, if the true make-up of the FSC as a profit stream is closely guarded and not subject to discovery outside litigation, as Hertz apparently admits, then it should apply to no one.

12.     Finally, as to accord and satisfaction, the defense rests on a new contract, one in which the parties agree to discharge the existing obligation -- specifically, expressly and intentionally. It is factually inapplicable to this case. Or, again, if it applies by the mere act of paying the FSC, it applies Class-wide.

13.     If the correct measure of damages (itself a legal question) is the difference between the FSC and the FPO, that, is a legal issue for the court, if it is even an issue at all. And, if that dollar amount somehow were a jury issue, it would be calculated in the same manner, using Hertz's internal records.

14.     If the jury returns a verdict for the Plaintiff, the trial would continue. If the jury returns a verdict against the Plaintiff, the trial will end and judgment against Plaintiff and the Class will be entered.

15.     Because the written representations and imposition of the FSC were substantively identical, the claims for all Class members are virtually identical, and proof of liability and damages can be established on a broad basis as to the Class.

       a.     Due to the uniformity of the written representations and the claims made by the Plaintiff for UCC violations and breach, if Hertz is liable to Plaintiff, it is liable to all Class members. If any of the affirmative defenses apply to Plaintiff, they apply to all Class members.

       b.     As to damages, if the Court determines that Class members are entitled to the difference between the FSC charged and the FPO at the same time and location, then it will be appropriate, if necessary, to rely upon summaries to documents as permitted by the rules of evidence, expert opinion, or similar methods, as demonstrated by Hertz in its pleadings and production.

If necessary, a master may also be used to review documents and calculate damages based on a formula that would award damages to the individual Class members based upon the FSC Hertz has charged at each location, and calculated them. In sum, all that remains is for the Class member to file a proof of claim, and Hertz will have the record of the FSC and FPO at the rental location on the date of rental. No further litigation is necessary.

16. The final judgment will be based on the jury verdict.

17. It is anticipated that all issues could be tried in two weeks or less, and to a single jury.

The foregoing Trial Plan meets the requirements of *Bernal*, and is set forth despite the identification of no individual issues at this time. The Court will address any post-certification developments relating to such issues, but none have been presented, and none are foreseeable at this time.

In sum, this case meets the predominance, superiority, and manageability requirements necessary for a lawsuit to proceed as a Class action. The Court finds that this case should be certified and proceed to trial as a T.R.C.P. Rule 42(b)(3) Class action on behalf of a Class of all Texas residents who were charged an FSC in Texas after February 6, 2000. Plaintiff should be appointed as Class representative, and his attorneys as Class counsel.

It is therefore ORDERED hereby as follows:

The following Class is certified: All Texas residents who were charged an FSC in Texas after February 6, 2000.

This is a statewide Class only. Excluded from the foregoing Class are rentals that commenced anywhere other than at a Hertz location in the State of Texas; the presiding judge of

the court in which this cause is filed, any other judge assigned to that court or to this cause, the immediate family of such judge(s), Class counsel, and each of the defendants and their respective officers, directors, employees, agents, and attorneys.

Plaintiff Jose M. Gomez is appointed as Class Representative; and

Austin Tighe of Feazell & Tighe LLP is appointed Class Lead Counsel, along with Armando Reyna of Law Office of Armando Reyna, Jerry Guerra of Law Offices of Jerry Guerra, and Jay Davis Watson of Payne Watson Miller & Malecheck P.C., who are appointed as Class Co-Counsel.

It is further ORDERED that Class Counsel submit a proposal for notice to the Classes for the Court's consideration, and in compliance with TEX. R. CIV. P. Rule 42(c)(2)(B).

Dated: 10 / 19 / 06

_____
The Hon. Jose Longoria
Presiding Judge